## UNITED STATES *v.* GLEASON.

### APPEAL FROM THE COURT OF CLAIMS.

No. 59. Argued December 7, 8, 1899.— Decided January 8, 1900.

The United States, through an officer of Engineers, contracted with the appellees to excavate rock within a fixed time. The contract contained the following provisions among others: "If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then in either case the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party or parties (or either of them) of the second part, and upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States ; and the party of the first part shall be thereupon author-

ized, if an immediate performance of the work or delivery of the materials be, in his opinion, required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States ; provided, however, that if the party or parties of the second part shall, by freshet, ice or other force or violence of the elements, and by no fault of his or their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or · them for such commencement or completion as, in the judgment of the party of the first part or his successor, shall be just and reasonable; but such allowance and extension shall in no manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon." *Held* that, under a proper construction of this contract, the right or privilege of the contractors, if they failed to complete their work within the time limited, to have a further extension or extensions of time, depended upon the judgment of the engineer in charge when applied to to grant such extension; and that no allegation or finding is shown in this record sufficient to justify the court in setting aside the judgment of the engineer as having been rendered in bad faith, or in any dishonest disregard of the rights of the contracting parties.

THIS appeal is from a decision of the Court of Claims covering two suits in that court, Nos. 17,782 and 17,783, consolidated and heard and decided as one suit, in which judgment was entered for the plaintiffs.

The first suit was on a contract entered into August 4, 1885, between Lieutenant Colonel W. E. Merrill, Corps of Engineers, United States Army, for and on behalf of the United States, and John R. Gleason and George W. Gosnell as partners, for the excavation of 110,000 cubic yards, more or less, of rock, in the improvement of the head of the Louisville and Portland Canal at Louisville, Kentucky, which excavation was called, in this litigation, the Upper Work.

The second suit was on a contract entered into January 13, 1887, between Major Amos Stickney, of the Engineer Corps of the United States Army, for and on behalf of the United States, and the firm of Gleason & Gosnell, for the excavation of 124,000 cubic yards of earth and 13,000 cubic yards of rock, more or less, for enlarging the basin near the lower end of the same canal, and called herein the Lower Work.

In the first suit, upon findings of fact and law, there was a judgment in favor of the plaintiffs for retained percentage in the sum of $3011.99, and for net profits which they would have made if they had been allowed to complete the work in the sum of $60,537.50. In the second suit there was a judgment for retained percentage in the sum of $2401, and for net profits, if the contract had been carried on to completion, in the sum of $2827.50. The aggregate judgment in the two cases was for the sum of $68,777.99.

There was a motion for a new trial, which was overruled, and also for an amendment of the findings of fact, which was granted in part. Thereupon this appeal was taken.

The findings of fact in the suit upon the first contract were as follows:

"I. On August 4, 1885, Lieutenant Colonel William E. Merrill, Corps of Engineers, United States Army, for and on behalf of the United States, party of the first part, and John R. Gleason and George W. Gosnell, partners, of the second part, entered into the contract and specifications set out in full with and made a part of the petition herein, whereby the claimants agreed to commence work on or before August 20, 1885, and make '110,000 cubic yards, more or less, of rock excavation in the enlargement of the Louisville and Portland Canal,' as therein provided for, at the rate of 85 cents per cubic yard, and to complete the same on or before December 31, 1886.

"Said contract further, and among other things, provided that —

"'If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then in either case the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party or parties (or either of them) of the second part, and upon the giving of such notice all money or reserved per-

centage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be thereupon authorized, if an immediate performance of the work or delivery of the materials be, in his opinion, required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States; provided, however, that if the party or parties of the second part shall, by freshets, ice or other force or violence of the elements, and by no fault of his or their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or them for such commencement or completion as, in the judgment of the party of the first part or his successor, shall be just and reasonable; but such allowance and extension shall in no manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.'

" II. The season from August, 1885, to December 31, 1886, was favorable in the main for the character of work provided for by the contract, though the claimants were compelled by reason of high water and freshets to suspend their operations a number of times, and by reason of these difficulties, coupled with an insufficient force of men and other means necessary for the performance of the work, they only ' completed 14 per cent of their entire work' during the contract period, 1½ per cent of which was done in 1885.

" III. In consequence of the claimants' inability to complete the work within the contract period, as aforesaid, they requested an extension of their contract to December 31, 1887, which was granted on conditions stated in a supplemental contract, as follows:

" ' Articles of Agreement.

" ' Supplemental articles of agreement entered into this 21st day of January, eighteen hundred and eighty-seven (1887),

between Major Amos Stickney, Corps of Engineers, U. S. Army, of the first part, and John R. Gleason and George W. Gosnell, partners, doing business under the firm name of Gleason & Gosnell, of Louisville, of the county of Jefferson, State of Kentucky, of the second part.

" 'This agreement witnesseth that the said Major Amos Stickney, for and in behalf of the United States of America, and the said Gleason & Gosnell, for themselves, their heirs, executors and administrators, have mutually agreed, and by these presents do mutually covenant and agree, to and with each other as follows:

" 'That the time for completing the contract signed by the said Gleason & Gosnell, August 4th (fourth), eighteen hundred and eighty-five (1885), for rock excavation in the enlargement of the Louisville and Portland Canal, be extended to December 31st (thirty-first), eighteen hundred and eighty-seven (1887), upon the following conditions, viz.:

" 'First. That the said Gleason & Gosnell shall so arrange their excavation on the line common to sections 2 (two) and 3 (three) as not to interfere with the government work of contractor Molloy or the work of the contractor for the new wall of the said Louisville and Portland Canal.

" 'Second. That should the said Gleason & Gosnell fail to employ a sufficient force, not less than three hundred (300) men, or its equivalent in machinery, to finish their work in the required time, then the officer in charge shall be authorized to perform any of the work in his discretion, and deduct the cost from any money due or to become due the said Gleason & Gosnell.'

" The foregoing agreement was made subject to approval of the Chief of the Engineers, United States Army, and was thereafter duly approved by the acting Secretary of War.

" IV. The claimants not having completed their contract during the year's extension thereof as aforesaid, they, on December 31, 1887, requested a second extension of said contract to December 31, 1888, for the reasons set forth in their communication of that date, which is as follows:

" 'LOUISVILLE, KY. *Dec. 31st,* 1887.

" 'Major AMOS STICKNEY,

" ' *Corps of Engineers, U. S. A.*

" 'DEAR SIR: We respectfully ask an extension of time on our contract for enlarging the Louisville and Portland Canal at the head of the Falls of the Ohio River until the 31st of December, 1888, for the following reasons, to wit:

" 'There was so much work being done upon railroads during the last year throughout the State that labor was very hard to get.

" 'We used every effort to secure the required amount of labor on our contracts, but found it impossible to do so. We even employed agents in New York and other cities to procure and ship labor to us here, and then found it very difficult to hold the labor we obtained, although we paid more than contractors paid for labor on railroads. Besides, the summer season was excessively hot; so very hot, that for sixty to ninety days, in many instances, the men would work only two or three hours a day.

" 'We propose to provide not less than ninety cars of the same capacity as those now used, and a sufficient number of carts and teams in addition, if necessary, to move not less than 640 cubic yards (measured in place) of excavated rock per day of ten hours.

" 'We propose to build an additional incline for depositing excavated material, the minimum actual working capacity of both inclines to be not less than 640 cars per day of ten hours.

" 'We propose to provide, maintain and operate not less than ten steam drills on the work and to provide and operate a sufficient force of men to excavate and handle at least 640 cubic yards of rock (measured in place) per day of ten hours.

" 'The method of carrying on the work will be such as will be approved by the officer in charge.

" 'When practicable, during the summer season, we propose to provide and operate an adequate force at night.

" 'All additional plant will be obtained and available for use by the time rock excavation can be commenced, and we pro-

pose to bear all extra cost to the United States occasioned by the extension of time for completing our contract.'

"Which letter was forwarded to the Chief of Engineers with the following communication :

"'U. S. ENGINEER OFFICE,
"'LOUISVILLE, KY., *December* 31*st*, 1887.
"'The CHIEF OF ENGINEERS, U. S. Army,
"'*Washington, D. C.*

"' GENERAL: I have the honor to forward herewith an application of Gleason & Gosnell for the extension of time for completion of their contract on work of excavating for enlargement of the head of the Louisville and Portland Canal.

"' The work of these contractors during the past season has been exceedingly unsatisfactory. Whilst they have had some difficulties to contend with in procuring labor, they have not conducted their work in a manner to produce the best results, and hardly seemed to comprehend the magnitude of their undertaking.

"' After a number of consultations with the contractors and their principal bondsman, I have, however, concluded that the interests of the government will be best served by an extension of time with the provisions which they have inserted in their application.

"' These provisions call for nearly double the plant heretofore used and the adoption of method of work which will be approved by the engineer in charge; also the bearing of all extra expense to the United States occasioned by the extension of time. With these provisions, I believe the engineer officer in charge will be able to push the work more rapidly than if it were relet to other contractors. I therefore recommend that the time for completing of their contract be extended as requested to December 31, 1888, on condition that the provisions in their application are faithfully carried out.'

"The extension of the time of said contract to December

31, 1888, as requested and recommended, was granted and approved by the Chief of Engineers 'on condition that the provisions in their application are faithfully carried out,' of which approval the claimants were notified by the following letter:

                  " 'U. S. ENGINEER OFFICE,
            " 'LOUISVILLE, KY., *January 9th,* 1883.
" ' Messrs. GLEASON & GOSNELL,
             " ' *Louisville, Ky.*

" 'SIRS: You are hereby notified that the time for completion of your contract for excavation in enlargement of the head of the Louisville and Portland Canal is extended to December 31, 1888, on condition that the provision in your letter of December 31, 1887, a copy of which is inclosed, shall be faithfully carried out. Any failure to carry out these provisions will terminate your contract.

         " 'Very respectfully,
               " 'AMOS STICKNEY,
           " ' *Major of Engineers,* U. S. A.'

"V. The rock to be excavated under the contract was in the river bed in an exposed situation, and was exposed to great force of the river when the latter rose to stages above the top of the government cross dam, which cross dam was 5 feet high, measured by the canal gauge.

"VI. Before the contract aforesaid was entered into the engineer in charge prepared specifications for the information of bidders, which were exhibited to the claimants, and on the faith of which they entered into the contract. These specifications (7) contained the provision that the contractor 'must begin work within twenty days after notification that his bid has been accepted, unless hindered by high water.'

"They were advised by the ninth specification so exhibited that their contract would provide 'that additional time may be allowed to a contractor for beginning or completing his work in cases of delay from freshets, ice or other force or violence of the elements, and by no fault of his or their own.'

"VII. The condition of the Ohio River was during the sea-

son of 1888, the period of the last extension, unusual and unprecedented for repeated and continued freshets and high water, overflowing the cross dam aforesaid; in consequence of which freshets and high water the working season of 1888, in the Ohio River at Louisville, Ky., was limited to about thirty-five days, mostly in July and August, as will more fully appear from the official monthly report of the defendants' officers of the progress of the work (known as section 3) from December, 1887, to December, 1888, as follows:

"'DECEMBER, 1887.

"'On section 3, Gleason & Gosnell, contractors, very little was done in December, except the removal of loose material which had been left above grade and in getting out machinery in anticipation of closing for the season. The water is several feet deep over both sections.'

\*        \*        \*        \*        \*

"'MARCH, 1888.

"'The stage of the river has prevented any work being done on the contracts of John Molloy, Gleason & Gosnell, and the Salem Stone and Lime Co.'

\*        \*        \*        \*        \*

"'APRIL, 1888.

"'No work has been done by the contractors on account of high water in the upper section.'

\*        \*        \*        \*        \*

"'MAY, 1888.

"'No excavation has been made by the contractors for the upper sections on account of high water.'

\*        \*        \*        \*        \*

"'JUNE, 1888.

"'On section 3, Gleason & Gosnell, contractors, a temporary earth dam has been constructed, the pumps started, and drilling on high points of rock begun. The first blasting was done June 30th.'

\*        \*        \*        \*        \*

"'JULY, 1888.

"'On section 3, Gleason & Gosnell, contractors, drilling on high points of rock was continued and a temporary dam of

earth finished. The pit was pumped out and tracks surfaced. The contractors were run out by high water on the 11th instant and have not resumed.'

\*          \*          \*          \*          \*

"'August, 1888.

"'On section 3, Gleason & Gosnell, contractors, excavation was continued until the 18th of August, on which date the work was flooded by high water.'

\*          \*          \*          \*          \*

"'September, 1888.

"'On section 3, Gleason & Gosnell, contractors, no work has been done since the contractors were run out by high water in August.'

\*          \*          \*          \*          \*

"'October, 1888.

"'On section 3, Gleason & Gosnell, contractors, a temporary earth dam was begun on October 5th. The contractors' pump was started on October 9th, and on the 11th the river washed away the dam, since which time no work has been done.'

\*          \*          \*          \*          \*

"'November, 1888.

"'On section 3, Gleason & Gosnell have done no work since October 11th. The river has been over their section since that date.'

\*          \*          \*          \*          \*

"'December, 1888.

"'No work has been done by the contractors during the month. The contract of Gleason & Gosnell expired on December 31st.'

\*          \*          \*          \*          \*

"VIII. During the working season of 1888 the claimants were diligent in the prosecution of work embraced in the contract, in preparing therefor, and in endeavoring to exclude the water and freshets of the river.

"They provided for the additional plant mentioned in their application for extension and had it ready for operation at the beginning of the season of 1888. But there was insufficient

working time to complete the work by December 31, 1888, at the rate of 640 cubic yards for each practicable working day of twenty-four hours, and this from no fault. of the claimants during the last extension of their said contract. No act or omission of the claimants during the period of the last extension made it impossible to complete the work by December 31, 1888.

"IX. The force of the defendants' officer in charge of this same work after December 31, 1888, was, by reason of the overflow of the river, compelled to cease the work of excavation, to wit, in 1889 and 1890, at stages of water at from 6.1 to 6.10 feet, and they did not complete the work in three seasons subsequent to 1888.

"X. After the working season of 1888 the claimants, through the personal solicitation of their attorneys, Bodley & Simrall, applied to the engineer in charge for an allowance of additional time for the completion of the work agreed upon in the contract so extended for the reason that they had been, by freshets and force and violence of the elements and by no fault of their own, prevented from completing the work at the time agreed upon in the contract, whereupon the engineer in charge refused to allow such additional time.

"The defendants, nor the engineer officer in charge on their behalf, did not annul or terminate the contract as therein provided for by reason of any delay or for any want of faithfulness or diligence on the part of the claimants in the prosecution of the work thereunder during the period of the last extension of said contract, but based his refusal to further extend the contract, because, as he asserted, the claimants had for a number of seasons failed to complete the work within the times agreed upon.

"No judgment or decision was given by said engineer on the question as to whether the (J. R.) claimants were prevented by freshets and force and violence of the elements during the season of 1888 from completing the work agreed upon within the period limited by the last extension of the contract, nor did he find or decide that the claimants were not so prevented.

" XI. The amount of the reserved 10 per centum under said contract is $3011.99, and has never been paid by the defendants to the claimants.

" XII. The total amount of rock in the 'area covered by the contract, as finally estimated by the defendants, was 118,935.22 cubic yards, of which the claimants had removed 35,435.22 cubic yards, leaving unremoved at the end of the season of 1888, 83,500 cubic yards.

" XIII. The cost to the claimants of performing this remaining work, 83,500 cubic yards, would have been $1.25 per cubic yard, and their total loss thereon at the contract price therefor would have been 40 cents per cubic yard, or $33,400.

" XIV. Under the specifications (2), made part of the contract and set out in the petition aforesaid, it is provided that 'all material excavated under this contract will be the property of the contractor, and must be disposed of in such manner as not to interfere with navigation, of which the engineer in charge shall be the judge. The contractor is forbidden to desposit any excavated material on canal property without permission.'

" Every yard of solid rock would have produced, by crushing, 1½ yards of broken stone, and upon this basis the remaining rock in the area covered by the contract at the end of the season of 1888 would have produced 125,250 cubic yards of broken stone.

" XV. The rock, when excavated and crushed, was a valuable commodity, for which there was a ready market in Louisville at $1.25 per cubic yard.

" XVI. The cost to the claimants of crushing and delivering the rock for the market was 50 cents per cubic yard and the net value to the claimants of the crushed and delivered rock was 75 cents per cubic yard, or $93,937.50, less the loss of $33,400, as set forth in Finding. XIII, leaving $60,537.50 as the claimants' net profit under the contract for the remaining work.

" XVII. From the foregoing official reports, as well as from the other facts found herein, the court finds the ultimate fact that the condition of the river was as herein set forth ;

and the time remaining for active work, after deducting the time when it was impossible to do work by reason of the high water and freshets, was insufficient for the completion of the work under the contract within the period of extension, and that it was impossible for the claimants to complete the work within the working time thus remaining."

The findings in the second case were substantially similar.

*Mr. Special Attorney Gorman* for appellant. *Mr. Assistant Attorney General Pradt* was on his brief.

*Mr. Temple Bodley* and *Mr. H. N. Low* for appellees. *Mr. John G. Simrall* was on their brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Gleason & Gosnell, a firm of contractors, entered into agreements with officers of the Engineer Corps of the United States Army, acting for and on behalf of the United States, whereby the former undertook to perform certain specified work within a certain specified time. The work specified was not completed within the time fixed, nor at any time. Nevertheless, the contractors claimed in the court below that they were entitled to recover the contract price for the portion of the work which was actually done, and damages for the uncompleted portion, because, as they alleged, they had been prevented, by no fault of their own, but by freshets, ice and other force and violence of the elements from doing the work within the time stipulated, and had been prevented by the officers of the United States, without just cause and contrary to applicable provisions in the contract, from a subsequent completion of the work.

The material questions are determinable by a proper construction of the following clauses contained in the contracts:

" If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material or the performance of the work on the day specified herein, or shall,

in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then in either case the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party or parties (or either of them) of the second part, and upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be thereupon authorized, if an immediate performance of the work or delivery of the materials be in his opinion required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States; provided, however, that if the party or parties of the second part shall, by freshets, ice or other force or violence of the elements, and by no fault of his or their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or them for such commencement or completion as, in the judgment of the party of the first part or his successor, shall be just and reasonable; but such allowance and extension shall in no manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.

"The contractor must begin work within twenty days after notification that his bid has been accepted, unless hindered by high water; and within thirty days thereafter his working force must consist of at least 200 men, if working by hand, or the equivalent thereof in case excavating machines are used. If, at any time, the working force be reduced to 150 men or less, the engineer in charge shall have the right to terminate the contract; and in such case the retained percentage shall be forfeited to the United States.

" The contract will expire on the 31st day of December, 1886; but the right is reserved to annul the contract in January, 1886, in case forty per cent of the work covered by the same shall not have been completed on or before the 31st day of December, 1885. The annulment of the contract under the provisions of this paragraph will, however, involve no forfeiture of moneys previously earned."

While we are to determine the legal import of these provisions according to their own terms, it may be well to briefly recall certain well-settled rules in this branch of the law. One is that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by the act of God, the law, or the other party. Difficulties, even if unforeseen, and however great, will not excuse him. If parties have made no provision for a dispensation, the rule of law gives none — nor, in such circumstances, can equity interpose. *Dermott* v. *Jones*, 2 Wall. 1; *Cutter* v. *Powell*, 2 Smith's Leading Cases, 1, 7th Amer. ed.

Another rule is, that it is competent for parties to a contract, of the nature of the present one, to make it a term of the contract that the decision of an engineer, or other officer, of all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that, in the absence of fraud or of mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts. *Martinsburg & Potomac Railroad* v. *March*, 114 U. S. 549; *Chicago, Santa Fé &c. Railroad* v. *Price*, 138 U. S. 185.

We do not understand that these principles are now called into question, but their applicability is denied; and we are called upon to consider a very acute and ingenious argument, successfully urged in the court below, aiming to show that, in the present case, the controverted matter, to wit, whether the contractors were entitled to a further and additional extension of time, was not left to the determination of the engineer in charge of the work, but is open, under the language of the agreement and the facts as found, to be inquired into and determined by the court.

The material terms of the contract calling for construction are as follows:

"The said Gleason & Gosnell shall commence work under this contract on or before the twentieth day of August, 1885, and shall complete the same on or before the thirty-first day of December, 1886. . . . Provided, however, that if the party or parties of the second part shall, by freshets, ice or other force or violence of the elements, and by no fault of his or their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or them for such commencement or completion, as, in the judgment of the party of the first part or his successor shall be just and reasonable."

Passing by, for the present, the fact that several extensions of time were granted by the engineer, and having regard only for the above language, what does it mean? The construction put upon it by the court below was thus expressed:

"In the cases at bar the contracts in terms provide that 'additional time. may in writing be allowed' for the completion of the work if prevented therefrom 'by freshets, ice or other force or violence of the elements' and by no fault of their own; not that such additional time may or may not be allowed as the engineer in charge may determine, but that 'such additional time may in writing be allowed' as in his judgment 'shall be just and reasonable.' The language, taken together, leaves no discretion in the officer except in respect of the additional time to be allowed, and even that, the contract provides, 'shall be just and reasonable.' The claimants in effect agreed that no additional time should be allowed them except on condition that they were prevented from the completion of the work (1) by freshets, ice or other force or violence of the elements, and (2) by no. fault of their own; and to hold, when those conditions are present, that it is within the discretion of the engineer in. charge to say whether any or no additional time may be allowed would be to eliminate that mutuality essential in conscionable contracts.

"Hence, taking into consideration the circumstances of this

case, and to effectuate the intention of the parties gathered from the contracts as a whole, we must hold that the word 'may' should be construed to mean 'shall.'

"As to what additional time would be just and reasonable he, as the engineer officer in charge, was to determine, not by the exercise of arbitrary power, but by the exercise of a just and reasonable judgment; and any additional time thus allowed would have been final."

We cannot accept this exposition of the language as sound. Rather do we interpret it to mean that, as between the United States and the contractors, the latter were to be relieved from their contract obligation to complete the work within the time limited, only if, in the judgment of the engineer in charge, their failure so to do was occasioned by freshets or other force of the elements, and by no fault of their own; and that, if and when, in his judgment, the failure to complete was, in point of fact, due to the extraneous causes, he was also to decide what additional time should be just and reasonable. In other words, the parties agreed that if the contractors should fail to complete their contract within the time stipulated, they should have the benefit of the judgment of the engineer as to whether such failure was the result of their own fault or of forces beyond their control, and, in the latter event, of his judgment as to what extension of time would be just and reasonable. Obviously the object of the provision in question was to prevent the very state of dispute and uncertainty which would be created if the present contention of the contractors were to prevail.

In support of its construction the court below points to a difference in the language between the clause respecting materials which provides that "the decision of the engineer officer in charge as to quantity and quality shall be final," and that used in the claim under consideration in which it is not said that the judgment of the engineer shall be final. But it is obvious that, from the very nature of the case, the decision of the engineer in the latter case must be final. The contract fixes the time within which the work must be completed, but provides that, in case failure to complete is providential and

without fault, such additional time may be allowed as the engineer may judge to be just and reasonable.

As, then, his granting of additional time would be final and irrevocable, so his refusal to allow it was necessarily final. The privilege of procuring an extension of time is conditional on the action of the officer, whether he grant or refuse it.

By changing the phrase "such additional time may be allowed" into the phrase "such additional time shall be allowed," the court below substituted for an appeal to the discretion and decision of the officer, an absolute right to have the question of prevention, whether by freshets or by fault, determined by the courts.

The fallacy of such reasoning is obvious; and is pointed out in the case of *Kihlberg* v. *United States*, 97 U. S. 398. That was a case of a contract between the United States and A, for the transportation by him of stores between certain points, provided that the distance should be ascertained and fixed by the chief quartermaster, and that A should be paid for the full quantity of stores delivered by him. It was not said in terms that the action of the chief quartermaster should be conclusive; and the distance, as ascertained and fixed by him, was less than the usual and customary route.

It was said by Mr. Justice Harlan, delivering the opinion of the court:

"The action of the chief quartermaster cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might constantly have arisen between the contractor and the government, resulting in vexatious and expensive, and to the contractor oftentimes, ruinous litigation. Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained and fixed by the

chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the government. The contract, being free from ambiguity, no exposition is allowable contrary to the express words of the instrument."

It was further suggested by the court below, and has been vigorously pressed upon us in the argument, that the engineer in charge was improperly influenced in refusing the third extension asked for, by a consideration of delinquencies in previous years, whereas it is claimed that the extended contracts were, in respect of their several dates, new contracts, the performance or non-performance of which did not depend upon anything done or omitted to be done thereunder prior to the last extension.

It may be that, by granting the previous extensions, the right of the Government to forfeit the compensation already earned and withheld under the terms of the contract was abandoned. But to say that the engineer in charge, when applied to for a third extension, may not take in view previous delinquencies and the futility of the extensions theretofore granted, seems to us quite unreasonable. He might well think that his duty to the Government and to the public interested in the early completion of the work forbade a further experiment in that direction. An indefinite succession of extensions was surely not within the contemplation of the contract. We do not wish to be understood to say that it would have been competent for the engineer in charge, if in his judgment the contractors had been duly diligent during the period of the last extension and had acted up to the conditions upon which such extension was granted, to have based his refusal for a further extension upon the *sole* ground that there had been delinquencies during the prior periods of extension. We mean merely to say that, in a *bona fide* exercise of the discretion conferred upon him, that officer might properly observe the conduct of the contractors through the entire scope of their past action, in deciding what weight to give to their promises as respected the future, and consider

whether previous grants of extension had brought forth such efforts on the part of the contractors as the circumstances required.

But was it at all the case that the engineer, in refusing the last application for further extension, based such refusal wholly upon a consideration of prior condoned delinquencies? Even if we cannot take notice of the affidavit of Major Stickney, contained in this record, in which he states that his refusal to grant a further extension was based upon the failure of the contractors to make proper provisions during the period of the last extension for carrying on their work, and that they had not fulfilled the conditions upon which the time had already been extended, we are permitted, and indeed required, in absence of evidence of bad faith on his part, to presume that he acted with due regard to his duty as between the government and the contractors.

The fallacy, as we think, in the position of the court below was in assuming that it was competent to go back of the judgment of the engineer, and to revise his action by the views of the court. This, we have seen, could only be done upon allegation and proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith. But in this case we find neither allegation nor proof. The only allegation in the petition which can be pointed to bearing on this subject is as follows: "That on or about December, 1888, the said Major Amos Stickney refused to plaintiffs the extension of time which they requested, and to which they were rightfully entitled under the contract, by reason of being prevented from completing the same within the time limited by the last extension and renewal thereof, by freshets and by the force and violence of the elements and by no fault of their own, and by reason of damages and hindrances from causes within the control of the United States; and the plaintiffs were thereby prevented from completing the work. And the plaintiffs aver and charge that the said refusal of the said Stickney to extend the time for the completion of the contract was wrongful and unjust, and a breach of the contract."

In other words, the plaintiffs allege that they were pre-

vented from completing their work by force and violence of
the elements and not by any fault of their own, and that the
judgment of the engineer in refusing an extension was there-
fore wrongful and unjust.   But as they had agreed, in the
contract as we have construed it, that the engineer was to
decide whether the failure to complete was due to the force
of the elements or to their fault, their allegation now is that
the determination of the engineer was wrongful and unjust,
because he decided the submitted issue against them.   Of
course, such an allegation was wholly insufficient on which
to base an attempt to upset the judgment of the engineer.

But, even if we pass by the insufficiency of the allegation,
we perceive no evidence, or finding based on evidence, which
would have sustained a stronger and more adequate allegation.
Indeed, no evidence whatever would appear to have been
offered to sustain a charge of bad faith or gross mistake equiv-
alent thereto.   The court below does indeed say, in the twenty-
first finding, that "no judgment or decision was given by said
engineer on the question whether the claimants were prevented
by freshets and force and violence of the elements during the
season of 1888 from completing the work agreed upon within
the period limited by the last extension of the contract, nor
did he find or decide that the claimants were not so pre-
vented."   But, as it was expressly alleged in the petition, and
was found by the court, that, on an application for a further
extension because of interruption occasioned by force of ele-
ments and not by any fault of the plaintiff, the engineer did
refuse to extend, the statement of the court must mean either
that it was necessary for the engineer, in order to give efficacy
to his decision, to declare in terms that it was based on a find-
ing of fault on the part of the contractors, or that the conclu-
sion of the engineer did not amount to a decision or judgment,
within the meaning of the contract, because the court reached
a different conclusion.

These are propositions of law and not of fact, and we cannot
assent to either of them.

Without protracting the discussion, our conclusions are that,
under a proper construction of the contracts in this case, the

right or privilege of the contractors, if they failed to complete their work within the time limited, to have a further extension or extensions of time, depended upon the judgment of the engineer in charge when applied to to grant such extension and that no allegation or finding is shown in this record sufficient to justify the court in setting aside the judgment of the engineer as having been rendered in bad faith, or in any dishonest disregard of the rights of the contracting parties.

These views lead to a reversal of the judgment of the court below in so far as it sustains the claim to recover damages for profits expected to inure to the plaintiffs if they had been permitted to complete the work.

As no actual damage or loss was definitely shown to have been suffered by the Government by reason of the non-completion of the work, and as no forfeitures were declared at the time of the several extensions, and may therefore be deemed to have been waived, we affirm that portion of the judgment of the court below allowing a recovery for the retained percentages of the compensation for work actually done and accepted.

Accordingly the judgment of the Court of Claims is hereby

*Reversed and the cases are remitted to that court with directions to enter judgment in accordance with this opinion.*

MR. JUSTICE HARLAN, MR. JUSTICE BROWN and MR. JUSTICE WHITE do not agree with the construction of the contract on the subject of the power of the engineer officer, and therefore dissent.