Williams, Judge,
delivered the opinion of the court:
The plaintiff in this suit seeks to recover $29,807.80, damages for a breach by the defendant of an alleged informal contract, under the terms of which the plaintiff agreed to manufacture and sell, and the defendant agreed to buy, 22,500,000 cartridge clips at a unit price of 1.2 cents, or a total consideration of $270,000.
Plaintiff’s claim being based on an informal contract, in order to recover the plaintiff must establish (1) that it had an informal contract with the defendant within the meaning of the act of March 2, 1919; (2) that the defendant has breached such contract, and that the damages sought to be recovered resulted directly from such breach; and (3) that the plaintiff within the time provided by law presented its claim to the Secretary of War for adjustment, and that the Secretary of War has failed or refused to make a satisfactory adjustment of the same.
On July 12, 1917, the Purchasing Bureau of Small Arms and Ammunition Manufacturers issued circular advertisement proposal No. 63, inviting bids from manufacturers on 179,858,000 clips for caliber .30 ball cartridges at a unit price of 1.2 cents each.
On July 20, 1917, the plaintiff addressed a letter to the Purchasing Bureau of Small Arms and Ammunition Manufacturers in answer to its circular advertisement and proposal No. 63, in which the plaintiff proposed to furnish and deliver 65,000,000 of the cartridge clips specified, at the price stated.
*99 On July 25, 1917, the Purchasing Bui’eau of Small Arms and Ammunition Manufacturers, through Colonel O. B. Mitcham, advised the plaintiff .that in response to its bid an award was made it for a minimum quantity of 22,500,000 cartridge clips to be delivered as follows:
Sept_ 2, 500, 000
Oct_ 3, 000, 000
Nov 3,000, 000
Dec — 3,000, 000
Jan_ 3, 000,000
Feb_ 3,000, 000
March. 3, 000, 000
Apr_ 2, 000, 000
The Purchasing Bureau of Small Arms and Ammunition Manufacturers advised the plaintiff that the clips to be furnished should be in accordance with the United States Government drawings and specifications, copies of both of which were furnished to the plaintiff, and that all clips would be subject to inspection by the proper officers or agents of the Ordnance Department of the United States Army.
On August 24, 1917, the bureau furnished the plaintiff detailed specifications for clips and advised it fully as to the composition and physical qualities of brass from which satisfactory clips could be manufactured. The bureau also furnished the plaintiff with sample of cartridge clips from the Frankford Arsenal, and informed plaintiff in the matter of the mixture of zinc and copper for the brass used in the manufacture of such clips by the Frankford Arsenal.
The plaintiff after receiving the award for the manufacture of 22,500,000 clips commenced to make preparation to manufacture and furnish the same. It had not up to that time been engaged in the manufacture of clips and it therefore became necessary that it acquaint itself fully with the methods employed in such manufacture, and equip its plant with the necessary machinery and dies, and also to secure the quality and quantity of brass necessary for the manufacture of the clips. The Frankford Arsenal was visited and samples of the sheet brass used by the arsenal in the manufacture of clips were procured by the plaintiff. The plaintiff took this sample of brass to the American Brass Company, *100 which company manufactured and delivered to the plaintiff a sample of brass which was represented to be of the same temper as that furnished to it by the arsenal. From this temper of brass the plaintiff made some cartridge clips and submitted them to the Government inspector at its plant,, who rejected them as being too soft. The plaintiff then procured another temper of brass, made some clips therefrom, which were likewise rejected by the inspector for the Government. The plaintiff thereupon procured another temper of brass and proceeded about the middle of November to the production of clips from which by the end of November it had produced about 100,000 clips. There being no Government inspector at its plant at the time, the plaintiff submitted about 100 of the cartridge clips to the Frankford Arsenal, which a civilian foreman of the double press room of the small arms department of Frankford Arsenal approved as being satisfactory. After the oral approval of the civilian foreman of the small arms department, the plaintiff proceeded with the manufacture of clips from brass of the temper of which the approved clips had been made, and by the latter part of December several million clips in various stages of completion had been manufactured out of such brass. During this time there was no Government inspector at the plaintiff’s plant. Government inspectors, however, later arrived and on December 26 inspected such cartridge clips as had been completed and refused to approve them on. the ground that the clips manufactured from this material, after a lapse of time began to spread at the rails. The plaintiff’s president shortly thereafter visited Washington, and took up with the officers of the Ordnance Department of the United States Army the difficulties it was having in producing clips that would meet the approval of the Government inspector. A thorough test was made of these clips by the inspector of small arms and accessories, Ordnance Department, Washington. They were found to be unsatisfactory and the plaintiff was advised that its manufacturing difficulties were due to the fact that the brass from which the-clips were manufactured was too hard, and that a different, or softer material should be used.
*101 On the 5th day of January, 1918, a formal contract was executed between the plaintiff company and the defendant for the production and purchase, respectively, of 22,500,000 cartridge clips, to be delivered as follows:
Jan., 1918. 1, 000, 000
Feb., 1918. 4,000, 000
Mar., 1918. 4, 500, 000
Apr., 1918. 4,500, 000
May, 1918. 4, 500, 000
June, 1918. 4,000, 000
All the cartridge clips specified in this contract were manufactured and delivered to the defendant, and were accepted and paid for in accordance with the terms of the contract, and are in no way involved in this suit.
After its conference in Washington with officers of the Ordnance Department, the plaintiff company procured a softer temper of brass than that used in the cartridge clips which had been rejected, and proceeded with the manufacture and delivery of cartridge clips under the terms of its formal contract of January 5, 1918.
The plaintiff expended the sum of $29,807.80 for materials, labor, and other expenses in making changes in the different temper of brass used in the production of its cartridge clips, all of which is claimed to be a loss due to unnecessary changes required by agents of the defendant, it being contended that the temper of brass finally used was the same as that originally obtained and used by the plaintiff in the manufacture of clips which were rejected.
Plaintiff contends that it had two contracts with the defendant, each providing for the manufacture and sale to the defendant of 22,500,000 cartridge clips, the formal coil-tract of January 5, 1918, which was reduced to writing, and all the terms of which were completely performed by each of the parties, and the informal agreement as originally made for the manufacture of 22,500,000 cartridge clips, which was not performed, but was breached by the defendant.
The question to be first determined is whether the informal contract upon which plaintiff’s suit to recover is based was a contract between the plaintiff and the defend *102 ant; or whether as claimed by the defendant it was a contract between the plaintiff and the Purchasing Bureau of Small Arms and Ammunition Manufacturers, a nongovernmental agency.
The Purchasing Bureau of Small Arms and Ammunition Manufacturers was an organization created by the Ordnance Department shortly after the outbreak of the war, with offices located at 50 East 42nd Street, New York City. The bureau was composed of small arms and ammunition manufacturers having munition contracts with the Government. The purpose of the organization was the negotiation of contracts on behalf of its members with persons who desired to supply materials to them.
In circular advertisement and proposal No. 63, issued by the Purchasing Bureau of Small Arms and Ammunition Manufacturers on July 12, 1917, it was specifically stated:
“ The material to be purchased in accordance with this advertisement is to be used on U. S. Government contracts for distribution to and for sole liability of any one or more of the concerns represented by the bureau, and individual company’s orders will be issued accordingly.”
In the letter of July 25, 1917, wherein the plaintiff was notified by the Purchasing Bureau of Small Arms and Ammunition Manufacturers that an award of 22,500,000 cartridge clips had been made to it on its bid in response to ■circular proposal No. 63, it was stated:
“ Contract for the quantity allotted to you will be made between the cartridge concerns represented by this bureau and yourselves. We will prepare, for your acceptance and signature, the contracts.”
The plaintiff’s letter of July 20, 1917, in response to circular proposal No. 63, issued by the Purchasing Bureau of Small Arms and Ammunition Manufacturers, and the bureau’s letter of July 25, 1917, to the plaintiff, in which an award was made to it for the manufacture of 22,500,000 cartridge clips constitute the contract on which plaintiff’s right to recover must stand or fall. The bureau in making the award to the plaintiff did not pretend that it was contracting for the Government, but on the contrary distinctly *103 and explicitly stated, both in circular proposal No. 63 and in its letter of July 25, 1917, that the contract to be entered into would be between the plaintiff and the cartridge concerns represented by the bureau.
To maintain its suit under the act of March 2, 1919, the plaintiff must establish the fact that its contract was with the Government and that the agent or agents with whom the contract was made were acting for and on behalf of the Secretary of War, or the President. Baltimore & Ohio Railroad Company v. United States, 261 U. S. 592, 596. This the plaintiff has failed to do. The contract upon which its suit is based was a contract with the Purchasing Bureau of Small Arms and Ammunition Manufacturers, and not with the Government.
If, however, the Purchasing Bureau of Small Arms and Ammunition Manufacturers had been an authorized agent of the defendant, and if the contract on which plaintiff relies had in fact been a contract with the Government, the plaintiff could not recover under the facts shown.
All clips furnished by the plaintiff were subject to inspection by proper officers or agents of the Ordnance Department of the United States Army. Only such clips as were approved by these officers or agents could be accepted. It was therefore incumbent upon the plaintiff to produce clips that would meet the test and pass inspection. It assumed all responsibility for the manufacture of clips in accordance with the plans and specifications. The defendant was not required (assuming that defendant was the contracting party) to inspect and approve in advance the materials used by the plaintiff in its manufacture of clips. It had been furnished with plans and specifications and was fully informed as to the kind of clips that would pass inspection and be accepted under the terms of the contract. The plaintiff was required to produce clips that, in their finished state, would meet the requirements of the specifications, and the proper officer or agent of the Ordnance Department was to be the sole judge as to whether such clips were acceptable under the contract.
Where a contract provides that a manufacturer shall furnish articles subject to the approval and acceptance of a *104 Government inspector, such inspector thereby becomes the final judge of their quality, and it is not within the province of the court to go back of such officer or agent and review his decisions, unless fraud, or mistake, or gross negligence such as would justify an inference of bad faith be alleged and proved. United States v. Gleason, 175 U. S. 588; Yale & Towne Mfg. Co. v. United States, 58 C. Cls. 633.
All clips produced by the plaintiff under its contract, which met the approval of the inspector for the Ordnance Department were accepted and paid for in full, consequently there was no breach of the contract.
The expense incurred by the jolaintiff in the procurement of a proper metal out of which to produce finished clips satisfactory to the inspector, whose duty it was to pass upon them, was a part of the manufacturer’s cost, and like other costs and expenses must be borne by the plaintiff company.
For the reasons stated the plaintiff can not recover and it is unnecessary to discuss or pass upon other points raised by counsel. The plaintiff’s petition should be dismissed. It is so ordered.
LittletoN, Judge; GkeeN, Judge; and Booth, Chief Justice, concur.