## ANDERSON v. UNITED STATES.

### No. 8561.

District Court, W. D. Washington, S. D.

Sept. 3, 1940.

DuPuis and Ferguson, of Seattle, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., of Tacoma, Wash., and Gerald Shucklin, Asst. U. S. Atty., of Seattle, Wash., for the United States.

YANKWICH, District Judge.

On February 10, 1930, Eivind Anderson, the plaintiff, entered into a written contract with the United States of America, through Ferry K. Heath, Assistant Secretary of the Treasury, acting under the direction of the Secretary of the Treasury, agreeing to construct and complete, according to the plans and specifications attached to the contract, a building to be known as the United States Immigrant Station and Assay Office, at Seattle, Wash-

ington, at an agreed price of $517,588. He began construction of the building on March 5, 1940, and completed it on November 15, 1931.

In an action under the Tucker Act, 28 U.S.C.A. § 41(20), the plaintiff seeks to recover a total of $5,166.60 claimed to be due him under the contract.

Briefly stated, the facts upon which the demand is based are these:

The plaintiff drove four test piles, after which he determined that 777 precast concrete piles of the following lengths: 252 piles 42 feet long; 479 piles 40 feet long; 23 piles 45 feet long; 23 piles 30 feet long; would be necessary to fulfill the requirements of the specifications and contract and to comply with the formulae set forth in them, and to achieve the requisite bearing value of thirty tons.

He manufactured the concrete piles in these lengths, but was not allowed by the Construction Engineer of the Government, acting for the Supervising Architect and the United States, to drive them their full length.

As a result, the plaintiff was compelled to cut off various portions of precast concrete piles, projecting above the elevation determined on by the Construction Engineer, of a total length of 2,606 linear feet.

The complaint stated, and the plaintiff testified at the trial, that the contractual value of the concrete piles so cut off and severed was $3,922.50 and the additional labor and expenses incurred in cutting them off was $1,244. Claims for these amounts were filed by the plaintiff and were disallowed by the Comptroller General on October 29, 1932.

We need not review, in detail, the proof in the record. So far as material, additional facts will be referred to in the discussion to follow.

I am of the view that the plaintiff has not met the burden of proving the liability of the government or its obligation to pay for the footage of pilings not driven and cut off on the order of the construction engineer, Clarence E. Swift.

The contract clearly contemplated the use of a definite amount of precast concrete piling in the construction of the building. Overage was to be paid for by the government at $2.50 per foot additional. Underage was to be deducted at the rate of $1.50 per foot.

Payment was, therefore, to be on the basis of piling *actually used and put into the job*. Less footage was used than the amount contemplated in the contract.

The contractor does not dispute this.

But he insists that this resulted from the fact that, after he made and drove a small number of test piles, and determined, from the test, the length of pile necessary to fill the requirements of the specifications and contract and to comply with the formulae therein and to achieve the requisite bearing value of thirty tons, he was not allowed to drive them their full length, and with points of piling at elevations of minus thirty four feet.

The vice of the argument is manifold.

While it is true that the tests were made, there is no showing that the construction engineer, representing the government, ordered the defendant to construct a definite number of piles in accordance with the test piles constructed and driven.

The acquiescence of the construction engineer in the tests was a preliminary step only.

It was not a waiver of the provision requiring payment on the basis of what was actually used in the construction.

Nor was it a waiver of the conditions in the plans and specifications relating to the method of driving. See United States v. Barlow, 1902, 184 U.S. 123, 22 S.Ct. 468, 46 L.Ed. 463.

The contractor seems to ground his entire case upon the provision in the specifications which sets the points of piling at elevation minus 34. But this is not the only test provided in the specifications. Final penetration which will safely support thirty tons, is also made a test.[1]

If these provisions conflict, a factual dispute arises, the determination of which

---

[1] For a better understanding of the matter, the provisions in the specifications are given here in full:

"74. The total lengths of the several types or classes of piles to be used for the basis of the contract hereunder shall be such as require cut-offs at the elevations indicated by drawings Nos. 400 and 401 with the points of wood or precast concrete piling at elevations minus 34, (except where lengths are specifically noted otherwise)."

"75. Unit Prices.—For each foot required more than the contract total for

is left to the construction engineer. He determined, as to each piling, when, in his judgment, a load carrying capacity of·thir-ty tons had been reached. Compliance with the instructions not to drive to the full depth did not make the government

wood piles or for wood sections of composite piles the contractor shall receive one dollar ($1.00) in addition to the contract price total, and for each foot less than the contract total footage fifty cents (50¢) shall be deducted from the contract price total.

(A) Similarly for each additional foot of precast piles the contract price total shall be increased by·two dollars and fifty cents ($2.50), with a deduction of one dollar and fifty cents ($1.50) for each foot less than the total contract footage.

(B) Further, for each additional total footage of cast-in-place concrete sections of composite piles the contract price shall be increased by two dollars ($2.00) and for each less total foot of such section the contract price total shall be reduced by seventy-five cents (75¢).

(C) The measurement for each pile length shall be to the nearest foot, from its point to its top or 'cut-off' end; in no case will the contractor be allowed payment for withdrawn, abandoned, broken or injured piles, nor for portions of any concrete piling remaining above the required level or of piles cut off because of being damaged or improperly placed.

(D) Test Piles.—At his expense, the contractor shall drive a sufficient number of test piles to pre-determine, so far as possible, the lengths of wood or precast piles that will be required to secure the specified bearing in the several areas of the work; these tests shall be made long enough in advance of the needs at the site so that piles (particularly of the precast type) will be on hand·to permit continuous operation of pile driving or setting."

"76. Driving.—No piles shall be driven until after the excavation at the respective areas they are·to occupy has been completed. They shall be driven vertically within 3-inches of the locations shown on drawings, not more than $\frac{1}{8}$-inch per foot from vertical, and the tops brought to cut-off within 2-inches of the elevations indicated on the drawings. Piles not otherwise noted on the drawings shall be driven to a final penetration which shall safely support 30 tons as. determined by the.formulas herein specified.

(A) All wood piles, the wood sections of composite piles and all precast concrete piles shall be driven, and the filling of concrete sections of composite piles shall be poured, in the presence of the Construction Engineer. The driving shall be continuous for each pile or driven section from the time of starting until the re-quired penetration has been reached and the contractor shall keep an accurate and detailed log of each pile or driven pile section showing the depth to which it was driven, the penetration under the series of blows noted in the following formula, and the general driving characteristics. Records shall also be kept of the time at which the precast piles were poured. The filling of the concrete section of each composite pile shall be continuous for its entire length.

(B) The bearing value of driven piles or pile sections shall be determined by the following formula in case a steam hammer is used:

$$P = \frac{2W'. \ H'.}{S \ plus \ 0.1}$$

in which

P = The bearing value of the pile in· tons;

W' = The weight of the ram plus the total effective steam pressure on the piston in tons (which shall be not less than 3000 pounds nor more than 6000 pounds).

H' = The stroke of the ram in feet;

S = The average penetration of the pile in inches under the last ten blows. The contractor shall obtain from the manufacturer of the hammer a written statement giving the proper value of W' to be used in the above formula for the weight and size of hammer used. This statement, together with descriptive catalogue, shall be forwarded to the Supervising Architect through the Construction Engineer."

"77. ·The bearing value of driven piles shall be determined by the following formula if a drop hammer is used:

$$P = \frac{2 \ W. \ H.}{S \ plus \ 1}$$

in which

P = The bearing value of the pile in tons;

W = The weight of the hammer in tons (which shall be between 2,500 and 3,500 pounds);

H = The height of the fall of the hammer in feet (which shall be between 10 and 20 feet);

S = The average penetration in·inches of the pile under the last ten blows."

"78. A water jet may be used in addition to the drop hammer if so desired by the contractor".

liable for the surplus footage which the contractor, in anticipation, had constructed or for the cost of cutting the extra heights down to the required minimum level.

In sum, all that the construction engineer did was to determine a factual dispute arising from conflicting interpretations of the plans and specifications.

Departmental proceedings instituted by the contractor sustained the construction engineer.

No showing of bad faith or fraud appearing, finality attaches to these determinations. See United States v. Gleason, 1900, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Ripley v. United States, 1912, 223 U.S. 695, 750, 32 S.Ct. 352, 56 L.Ed. 614; and see my opinion in Wenzel & Henoch Construction Co. v. Metropolitan Water District, D.C., 1937, 18 F.Supp. 616.

But just as administrative finality bars recovery by the plaintiff for the footage not used and the cost of cutting it off to the desired level, the government's final settlement with the contractor and its acceptance of the building, bars, in the absence of fraud, recovery based upon an overestimate of the actual footage. There was no illegal payment where payment was not due as in Heidt v. United States, 5 Cir., 1932, 56 F.2d 559, and other cases relied on by the government. Here the government did not pay anything in excess of the contract price. It merely failed to claim a deduction which it might have claimed. The final settlement forecloses the matter.

Hence, neither party shall recover from the other and each shall pay its own costs.