**CONSOLIDATED ENGINEERING CO., Inc.,
v. UNITED STATES.**

No. 8597.

District Court, W. D. Washington, S. D.

Nov. 20, 1940.

DuPuis & Ferguson by W. H. Ferguson, all of Seattle, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash., for defendant.

YANKWICH, District Judge.

Like Anderson v. United States, D.C. Wash.1940, 34 F.Supp. 490, recently decided, the action arises under the Tucker Act. 28 U.S.C.A. § 41(20).

The plaintiff seeks to recover a total sum of $5,836.27 for money alleged to be due under a contract for the construction of a post office building at Grants Pass, Oregon, entered into with the United States Government on September 19, 1935.

The items constituting the claim are twelve in number. The grounds for their denial will be indicated separately, except where, by their nature, either the same facts or the same principles of law govern their disposition.

1. Liquidated Damages......$3,150.00

The contract provided for the completion of the building within three hundred days after the date of receipt of notice to proceed. There was a delay of seventy days. The contract and specifications specifically provided for liquidated damages in the sum of forty-five dollars for each calendar day of delay. Liquidated damages of this character, recoverable independent of proof of damages, are given statutory recognition in the law of public contracts. 40 U.S.C.A. § 269. The courts have also recognized them when embodied in public contracts without any direct sanction of law. United States v. Bethlehem Steel Co., 1907, 205 U.S. 105, 119, 27 S.Ct. 450, 51 L.Ed. 731; Six Companies v. Joint Highway District No. 13, 9 Cir., 1940, 110 F.2d 620, 625. Where the intention of the parties is clear, the application of the penalty will be sustained. Here the evidence fails to show any delays caused by any act or demand on the part of the Government which its representatives did not have the right to make.

For one delay traceable to an act of the Government, a short extension of time was actually given. No other was requested.

While the officers of the plaintiff corporation did claim that part of the work was, at times, delayed by controversies between them and the engineer in charge of the work, there is no evidence whatsoever of any complete stoppage of the work due to any improper or illegal demands on the part of that or any other official.

The uncontradicted testimony was that the officials of the plaintiff, when the work on the building ceased, arbitrarily declined to surrender to the Government its own property and to deliver the keys to it until complete clearance had been given as to certain construction items which were being questioned. The Government's property

was kept idle and unoccupied for postoffice purposes because of this demand. To this act is traceable most of the delay which occurred. And the testimony of the postmaster of Grants Pass clearly showed the length to which the officers of the plaintiff went in forbidding them the use of the property. Certainly, the Government cannot be blamed for insisting that the contractor should bear as loss for the inoccupancy, the liquidated damages called for in the contract, and to pay for other delays traceable to him.

2. Violations of Eight-Hour Law ......................... $525.00.

■■ The contract made an eight-hour day compulsory and provided a penalty of five dollars for each calendar day in which an employee was required or permitted to labor more than eight hours. This provision and the penalty are mandatory, under the law, in contracts of this character. 40 U.S.C.A. § 324. There are no exceptions to this provision either in the contract or in the law. The departmental finding that there was violation is amply supported by the evidence. In fact, it is clearly proved by the pay rolls of the plaintiff itself and of the subcontractor. The fact that during the negotiations for the settlement of the controversy, some representative of the Government may have suggested the waiver of a portion or even of all the penalty does not alter the fact that, ultimately, the Treasury Department imposed the penalty. For this there was ample justification.

3. Rejected Materials........... $75.00

■ Certain materials, samples for which were first approved, were later rejected by the Government. Such tentative approval did not dispense with the necessity that the materials comply in all respects with the specifications. The Government's deduction was justified.

4. Inspection Expense..........$10.53

■ The cost of the particular inspection was rightly thrown on the contractor when the inspection revealed defects.

5. Change of Concrete Mix....$728.52

■ The change of concrete mix involved clearly a dispute as to the interpretation to be given to the specifications. The engineer's action on this claim, not having been appealed, is binding in the absence of a showing of fraud or bad faith.

6. Change in the Drain Tile System (bal.) ................... $405.12

■ It is evident from the study of the correspondence that the minds of the contractor and the Government agent, either on his proposal for $310 or his proposal for $689.37, did not meet in the form of an actual offer and acceptance. Therefore, the final allowance of the claim in dispute at a low figure has acquired finality.

7. Additional Excavation and Concrete .........:.............$69.57

■ As the Government never authorized the extra excavation for which claim is made or approved the later claim for the same, the plaintiff cannot recover. More, there is testimony that the extra excavation was within the contemplation of the specifications.

8. Plaster Waterproofing........ $99.00

■ There is evidence in the record tending to show that this was not demanded. There mere presence of the engineer while it was being done is not sufficient to charge the Government with the expense. As to this item, an appeal was made to the Secretary of the Treasury who denied the claim. Under the contract such denial is conclusive.

9. Reset Floor in Boiler Room...$10.00

■ There is evidence in the record that the plans and specifications called for fire brick. As to this item also, there was an appeal to the Secretary of the Treasury, who denied the claim. His action, under the contract, is final. The item clearly involved a matter as to which experts might disagree. Where emphasis on one matter rather than another might lead to a different conclusion, we have a dispute as to interpretation of the plans and specifications and the action of the Treasury Department on the claim is, as of the two preceding matters, conclusive.

10. Plastering of Beams in Basement ....................... $132.06

■ This plastering was necessitated by the change in the concrete mix. Having reached the conclusion that the change in the concrete mix was justified, it follows that the additional labor on this is not compensable. This item was also made the subject of an appeal to the Secretary

of the Treasury. His denial of it forecloses recovery.

11. Sewer Manhole............:....$97.80

█ The type of manhole required was one as to which interpretations might differ. The Government engineer testified that the contract called for the type ordered. This interpretation was approved by the Assistant Director of Procurement. His determination is final.

12. Interest on Delinquent Payments ......................... $350.00

█ The contractor claims interest on payments withheld. The contract contemplated progress payments. But the specifications state specifically that "no partial payment will be made on work not satisfactorily executed in place".

This authorizes the withholding of payments until the work had received final approval. It may well be that, at times, the application of such a clause works an injustice. For the payment withheld may be out of proportion with the expense involved in making the alterations. Yet the law is loathe to consider the withholding of a payment as a breach justifying the abandonment of the contract. There is also the fact that, in the absence of direct statutory authority or contractual undertaking, there can be no recovery of interest against the United States on account of non-payment of claims or accounts. See: Seaboard Air Line R. R. Co. v. United States, 1923, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Boston Sand & Gravel Co. v. United States, 1928, 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170; Baxter v. United States, 8 Cir., 1892, 51 F. 671; New York & Porto Rico Steamship Co. v. United States, 2 Cir., 1928, 29 F.2d 1014; Huntley v. Southern Oregon Sales, Inc., 9 Cir., 1939, 104 F.2d 153, 154.

Public work contracts have an element of one-sidedness to which I adverted in my opinion in Wenzel & Henoch Construction Co. v. Metropolitan Water District of California, D.C. Cal.1937, 18 F.Supp. 616. By providing that disputes shall be determined either by certain designated officials or by departmental appeal, the contractor places himself in a position where, if dissatisfied with the action of the official or the department, he cannot recover unless he shows bad faith or fraud in making the determination. The Circuit Court of Appeals for the Ninth Circuit, in sustaining my judgment in the above case (Wenzel & Henoch Const. Co. v. Metropolitan Water District of California, 9 Cir., Oct. 15, 1940, 115 F.2d 25, 28), said: "The opinion of the District's Chief Engineer that the work on the tunnel was *unnecessarily and unreasonably delayed was final and conclusive upon the Company in the absence of fraud*. American-Hawaiian Engineering & Construction Co. v. Butler, 165 Cal. 497, 504, 513, 133 P. 280, Ann.Cas.1916C, 44; Connell v. Higgins, 170 Cal. 541, 150 P. 769; Gray v. Cotton, 166 Cal. 130, 136, 134 P. 1145; Martinsburg & Potomac R. R. Co. v. March , 114 U.S. 549, 551, 552, 5 S.Ct. 1035, 29 L.Ed. 255; United States v. Gleason, 175 U.S. 588, 607, 20 S.Ct. 228, 44 L.Ed. 284." (Italics added)

The conclusion reached is not only sustained by the evidence adverted to. It is also commanded by the fact that each of the items involved fáctual disputes as to which the determination of the engineer was given finality, through failure of the contractor to appeal to the Secretary of the Treasury or through the action of the latter on appeal.

Hence judgment will be for the defendant that plaintiff take nothing by its complaint.

Findings and judgment to be prepared by counsel for the defendant.