Peelee, Ch. J.,
delivered the opinion of the court:
The claimant on August 11,1894, entered into the contract made part of the petition, wherein for the consideration of $117,527 he agreed to furnish the materials, labor, and appliances and to do all the work therein specified in the construction of the power house ,and office building for the 800-foot lock, St. Marys Falls Canal, Mich., and to complete the same' in all respects by December 31, 1895.
The claimant entered upon the performance of the contract, and after expending all his available money — about $16,000 — he was unable to proceed further with the work, and his bondsmen thereafter furnished the residue of the money, and the work was completed and in the main under the claimant’s supervision; was accepted by the Government, and the' *22 full contract price therefor w,as paid less $579.55, deducted as expenses of inspection and supervision during the period of extension after December 31, 1896, as shown in finding VII.
The claim herein is for extra and additional labor and materials and for expenses during periods of delay caused by the Government and for deductions for inspection, for profits and for superintendence by the claimant, as set forth in the findings.
The .contract is a rigid one, but it was of the claimant’s making, with full knowledge and information of all the facts, and the duty of the court is simply to construe the contract as thus entered into and to determine what work and materials were or were not within the terms of the contract.
• Eespecting generally the claims for extra work and materials, paragraph 46 of the specifications, as well as the eighth paragraph of the contract, provide in substance that no claim whatever shall at any time be made by the contractor on account of any extra work or materials performed or furnished unless the same shall first be expressly required and an agreement therefor entered into in writing, wherein the prices and quantities shall be agreed upon by the parties and approved by the Chief of Engineers. The paragraph of the specifications referred to also includes claims arising from delays of any kind.
No extra or additional work was required in writing, nor was any agreement therefor entered into in writing or otherwise. On the contrary, the officer in charge insisted at the time that the work performed was only such as that required by the terms of the contract, and no bad faith is shown. A like contention was upheld in the case of United States v. Gleason (175 U. S., 588, 607), the court saying: “We are permitted, and indeed required, in the absence of evidence of bad faith on his part, to presume that he acted with due regard to his duties as between the Government and the contractors.”
By paragraph 439 of the specifications it was provided that “ The object of the foregoing specifications is to secure the complete construction of the building, using the best mate *23 rials and workmanship of the several kinds specified, and the contractor will be held to this object, although some minor matters may have been overlooked ”; while paragraph 32 of the specifications provides that “ Should any doubt arise as to the quality of the work required by the plans and specifications, it shall be decided by using the best class of work that any interpretation will admit of.”
Here again the contractor was bound to know that he would be held to “the best materials and workmanship * * * although some minor matters may have been overlooked,” and in case of doubt as to the quality of the work the officer in charge was therein authorized to decide the matter “ by using the best class of work that any interpretation will admit of.”
The claimant contends that he was put to extra expense by reason of the delays of the Government in the completion of the excavation and wall foundations. But conceding this to be true, paragraph 41 of the specifications provides that “ Should there be any delay in the completion of the excavation and wall foundations, the time set for the completion of the contract shall be extended an amount equal to such delay.”
Such extension was granted for all the delays of the Government, as set forth in Finding VII, and this court in the case of Merchants’ Loan & Trust Co. (40 C. Cls., 117, 132) held a like provision as valid and binding as any other part of the contract.
The contract further provides that “All materials furnished and work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government, and such as do not conform to the specifications set forth in this contract shall be rejected. The decision of the engineer officer in charge as to quality and quantity shall be final.”
Referring to the authority of the engineer in charge to determine the quantity and quality of materials to be- furnished, the court in the case of Barlow v. United States (35 C. Cls., 514, 546) said: “ Some one must pass upon the fitness of the material, the sufficiency of the workmanship, the *24 amount of work performed, etc. These are matters which can not be left until a building is completed; it is for the interest of both parties that they be settled as the work proceeds. The architect or engineer in charge being the person most familiar with the work, and professionally fitted to pass upon such questions, is ordinarily designated as the referee or arbitrator to determine them. Such agreements for such arbitraments must be upheld.”
This being true it was incumbent upon' the Government to provide some person competent to make such inspection, and this it appears to have done. Finding XVI recites in substance that the engineers and inspectors in charge of the work were honest and capable officials, being graduates in their profession of civil engineering from reputable schools and, though lackingi in experience in the construction of a like building, had practical experience in masonry and brickwork, which constituted two-thirds of the work under the contract; and though they erred in requiring certain work to be done outside of the contract they appear to have performed their duties in good faith; and other than as shown in Finding VII as to delays and extensions of time under paragraph 41 of the specifications they were not responsible for any delays in the performance of the work. Therefore, in the absence of any evidence of bad faith, or such gross error as to imply bad faith, on the part of the officers their acts must be upheld. United States v. Gleason, supra, and many other cases which need not be cited.
Whenever the contractor was aggrieved at the rulings or requirements of the .local engineer or inspector he was at liberty to formally protest and appeal therefrom to the enginéer in charge. This he appears to have done in three instances. First, as set forth in item 4 of Finding X respecting the additional claim for cornices in the side halls. The claimant protested against doing the work and appealed to the engineer officer in charge who decided to leave the matter to the local engineer, who required the claimant.to perform the work, which he did, and for which we have allowed. Two other appeals were taken as set forth in Finding XIII, wherein, as shown by-his. petition, he claimed $1,100 expense *25 incurred during the delay pending the appeals, but as there was no appreciable delay, and other work could be done in the meantime, the court has found that no expense was incurred. In respect of the claim of $13,000 made by the petition for extra work in cutting stone, as set forth in Finding XIV, no formal protest was made or appeal taken to the engineer in charge from the decision of the local engineer requiring the work to be done. The court has found that the inspectors were not more rigid than they were required to be by the contract. Hence, no allowance is made therefor.
The claimant’s silence in presenting this claim is not without significance. At the time of final settlement in 1897 a claim in bulk for $47,000, equal to two-fifths of the contract price, was presented; but not until the filing of the petition in this case in June, 1901, four years thereafter, did he file an itemized, claim, and then it was increased to over $68,000, or three-fifths of the contract price, of which less than $5,000 is claimed for 'extra, or additional work growing out of the inspection of work and materials on the building proper.
We have found that while the inspection of the work and materials under the contract were rigid they were in conformity therewith. Hence the remaining question is, Was any work for which claim is made herein extra or outside of the contract? As to this let us examine the items of the claim in the order presented in the findings, and first as to the items set forth in Finding X:
. 1. The claim for the additional coat of paint arose in this wise: After the claimant had finished the painting called for by the specifications parts of it became soiled and injured through careless work in construction, and in order to leave the building in a good and finished condition, as the con-, tract required, the engineer in local charge required the claimant to put on the additional coat of paint, which he did. But the claim having arisen through his own fault, for which the Government was in nowise responsible, no allowance is made therefor.
2. The additional work on top of the elevator was clearly outside the terms of the contract; and while the claimant carried out the verbal order of the local engineer in doing the work no agreement therefor in writing was entered into be *26 tween the parties as required by the terms of the contract. The work, however, having been done by the claimant and the Government having accepted same and received the benefit thereof we think he is entitled to recover on quantum meruit the reasonable value of the work done, which we have found was $205.
3. The claim for the difference in price of certain locks offered by the claimant and those he was required to furnish can not be sustained for the reason that those he offered were inferior, while the Yale locks required by the officer were in conformity with paragraphs 289 and 439 of the specifications requiring the best quality of hardware, and hence no allowance can be made therefor.
4. The claim for additional cornices in the side halls can only be held within the contract by construction. That is to say, while the specifications show appropriate cornices for the main hall they do not for the side halls which cross the main hall. The claimant wanted to furnish cornices similar to those in the rooms off the side halls, which were not so elaborate as those in the main hall, but the engineer in. local charge decided that the cornices for the side halls were a part of the system of decorations and ordered the claimant to furnish cornices to correspond to those in the main hall, which he did under protest at an extra expense of $64. An appeal was taken to Colonel Lydecker, the Engineer officer in charge, who, instead of passing upon the question, as he should have done under the terms of the contract, left it to the decision of the local engineer, and he required the work to be done as a part of the contract. For the reasons stated we think the work was outside the contract, and as the Government received the benefit thereof the claimant is entitled to recover on quantum meruit the amount stated.
5. Respecting the claim for additional concrete, paragraph 71 of the specifications required the contractor to cover the entire floor, of the basement and walls with 6 inches of concrete. The foundation of the building, however, was provided by the Government and should have been so constructed as to leave about 6 inches of concrete to be done by the claimant as his contract required. But in the construe *27 tion of the foundation, the floor was not brought up to the line prescribed, and the claimant in order to execute his part of the contract was required to lay If inches of concrete over the entire floor of the basement in addition to the 6 inches provided by the contract to bring the floor up to the specified height. This work was outside the contract and entailed an additional expense on the claimant of $500, which is reasonable; and while no written agreement was entered into for the work the Government received the benefit thereof and we think the claimant is entitled to recover on quantum meruit therefor.
6. The cutting of stone for use over the doorways at the north and south entrances by order of the assistant engineer in charge was not provided for in the specifications or drawings, and though no contract was entered into in writing, the claimant performed the work at the reasonable cost of $120 and the Government received the benefit thereof. We therefore think he is entitled to recover the amount on quantum meruit.
7. The claim for the additional transom in the tower can not be allowed, for the reason that the transom which the claimant first furnished was badly checked and puttied and of inferior workmanship, and was consequently rejected by the engineer in charge, and the claimant -was required to take it out and replace it with one in conformity with the contract, which he did without protest.
8. The claim for extra plastering, we think, is allowable for the reason that the lines for the partitions were given to the contractor by the local engineers, and when the walls ■were carried up they were found to be out of plumb, to remedy which the inspector in charge required the claimant to put on an extra thickness of plastering averaging 2% inches above that which would otherwise have been required; and on account of the thickness of the plastering, and to make it more secure, the claimant was required to mix the mortar with Portland cement instead of plaster of Paris, as called for by paragraphs 317, 318, and 320 of the specifications, which he did at an extra cost to him of $1,325. Though it appears that no protest was made by the claimant at the time with *28 respect to this extra plastering, we think it clearly falls within the definition of extra work, as, but for the error of the local engineers in giving incorrect lines, the walls, when carried up, would have been plumb; and, inasmuch as the Government has received the benefit of the work, we think the claimant is entitled to recover on quantum meruit therefor.
9. The claim for extra cost of cleaning and dressing the floors can not be allowed, for, while the claimant was required by the local engineers to lay the floors before the plastering and other dirty work was done, specification 250 required that upon completion of the floors they “ shall be planed off.” We therefore construe this to mean that any accumulation of dirt was to be removed; that is to say, the floors were to be cleaned and dressed, and certainly if planed off that would meet the requirement.
• Extra cost of electric fixtures, as set forth in Finding XI: The claimant offered electric brass fixtures, ,as provided under paragraph 428 of the specifications, but the same were rejected by the engineer in local charge as not conforming to the requirements of the specifications, and he required the claimant to furnish solid bronze metal fixtures with a little cast bronze work on .them, which were more expensive than those offered by the claimant, the difference in cost being $425; and being outside of the contract, and the Government having received the benefit thereof, the claimant is entitled to recover therefore on quantwm meruit.
The claim- for the loss of brick stored on the pier can not be sustained, for, while the brick were dumped into the river and lost in the operation of a dredge in removing the pier under the direction of the officer who was also the local engineer in charge, the claim is one in no way connected with the work under the contract, nor can the loss of the brick be considered as extra or additional to the work thereunder. The Government received no benefit therefrom; and while the loss imposes a hardship upon the contractor, the claim in its nature, arising out of the wrong of the officer, is rather in the nature of a tort than a claim arising out of the contract, and therefore the court is without jurisdiction to render judgment therefor.
*29 Respecting the claim for delays pending appeals to the engineer in charge as to the manner of tooling face and beds of stone, as set forth in Finding XIII, the court has found that there was no appreciable delay, and no expense shown to have been incurred.
The claim for the cost of extra work in cutting backs of stone, as set forth in Finding XIV, can not be sustained, for the reason that paragraph 78 of the specifications requires that the joints of all cut stones shall be uniform and shall not exceed -J inch in thickness. This necessitated the cutting of the stone to dimensions very closely in order to get 3g inch in thickness, as therein required.
As to the backs of the stone, the claimant was required to cut the same within 1 inch of dimensions, except where the backs came through the walls. For the doing of this work the claimant protested verbally to the inspector, but no formal protest in writing was made by him to the engineer in charge, nor does it appear that any ajppeal was taken from the decision of the inspector to the engineer in charge. We do not think the inspection of the stone was more rigid than required by the contract, and therefore no amount therefor is found.
None of the items herein were included by the claimant in any monthly or final estimate of work'-done, nor did he make any formal or written protest at the time against the doing of the work except as set forth in item 4 of Finding X, and as to the item of tooling face and bed of stone, wherein appeals were taken as set forth in Finding XIII, though frequent complaints were made to the local inspectors from time to time that their inspections were too rigid.
The claimant, having completed the contract work and been paid the consideration therefor, can not be allowed additional compensation for his services in superintending the work under his contract; and as it is not shown that the Government in any way interfered with or delayed the claimant in the performance of his contract other than for which extensions of time were granted, as provided therein, no gains were prevented nor profits lost through the fault of the Government; and hence he is not entitled to recover therefor.
*30 Upon the whole case the court awards judgment in the claimant’s favor on Finding XI and on items 2, 4, 5, 6, and 8 of Finding X in the sum of $2,639.
Howry, J., was not present when this case was tried and took no part in the decision.