Hay, Judge,
delivered the opinion of the court:
The facts are fully set forth in the findings and it is not necessary to recapitulate them here.
The first item claimed by the plaintiff is the sum of $4,704.24, which amount the plaintiff expended in the proper care of the materials and property of the United States as *269 a necessary result of the stoppage of the work by the United States. This item should be paid to the plaintiff, and the defendant does not dispute it.
The next item allowed is the sum of $700.10, which the plaintiff expended for necessary extra work, of which the defendant has received the benefit. This work was done by the plaintiff upon the verbal order of the constructing quartermaster in charge of the work, but no written order was given. The work so done was necessary to the completion of the work. If it had not been done the work would have been left unfinished. Under the circumstances it does not seem to us that a written order was necessary in order that the plaintiff might be paid for it. The Government received the benefit of it, and the plaintiff is entitled to recover on quantum meruit therefor. Gearing v. United States, 48 C. Cls. 12, 26, 27.
The next item allowed is the sum of $45,900, which, under the evidence in this case, is the reasonable profit which the plaintiff would have made had it been permitted to perform the contract.
There is no question that the United States breached the contract by its refusal to allow the plaintiff to perform and complete its contract. The plaintiff would have completed its contract within the period of time prescribed therein if the United States had not stopped its performance. It has' been held that if the breach consists in preventing performance of the contract without the fault of the other party, who is willing to perform it, he'would be entitled to profits that he would realize by performing the whole contract. As to how these profits should be arrived at see Broadbent Laundry Corporation v. United States, 56 C. Cls. 128, 132, 133. The court in arriving at the amount of profits to which the plaintiff is entitled followed the rule laid down in the Broadbent ease, supra. See also United States v. Smith, 94 U.S. 214, 217, 218, 219; United States v. Behan, 110 U. S. 338. The law is well established that the United States must be bound by the same rules which govern in cases between individuals; and the plaintiff in this case must be awarded damages to the extent of the loss *270 which was the necessary consequence of the suspension of the contract by the United States.
In this case the work was stopped by the United States. After eight months or more the plaintiff was allowed to resume only a paid of the work, but was still refused permission to complete the entire contract. This was an improper interference with the work on the part of the United States. If the plaintiff by reason of this stoppage incurred any loss or damage, the United States must answer for it, and hence the plaintiff has been allowed the items found in Finding XII.
The Government contends that by virtue of the passage of the act of July 11, 1919, 41 Stat. 128, the contract was canceled; that the Congress had the right to so cancel the contract, and that therefore there was no breach of the contract by the United States. A reading of the statue referred to discloses the fact that Congress did not withdraw the appropriation which had been made for construction work at Camp Knox; it only withdrew appropriations which had been made for the purchase of real estate for the construction of Army camps and cantonments. The insertion of the word “ of ” before the words “ for the construction of camps ” in the statute does not make sense; it was evidently a clerical or typographical error. The word “ of ” can not be turned into “ or,” and Congress having its attention called to this error, on August 12, 1919, passed a joint resolution clarifying that part of the statute above quoted, and in the preamble of the resolution that part of the statute was restated and the word “ of ” was left out.
The joint resolution reads as follows:
“Whereas doubt exists as to the proper intei’pretation of said provision and as to the intention of Congress in enacting the same: Therefore be it
“ Resolved, by the Senate and House of Refresentatwes of the United States of America in Congress assembled, That the foregoing provision of said act shall not be construed to prevent the payment from the unexpended balances of said appropriations of bills lawfully incurred for construction work actually performed or construction material actually purchased and actually produced under the terms of the contract prior to the approval of said act.
“Approved, August 12, 1919.” (41 Stat. 278.)
*271 The Government contends that while the plaintiff can be paid under the contract for what construction work was actually performed, or for bills lawfully incurred for such work, or for construction material actually purchased or produced prior to the approval of the act of July 11, 1919, yet the passage of said act defeats the recovery of profits and operates as a cancellation of the contract. It seems plain to us that such is not the effect of the act nor of the joint resolution which undertakes to make plain the purpose of the act. In the contracts in this case there is no provision for the cancellation of the contract; they were not contracts which were entered into when an emergency existed; there was not at the time the contract was entered into any statute in existence authorizing the President to cancel, suspend, or modify the contracts; the contracts related to work to be done in peace time and for the construction of work intended to be used as a Field Artillery range and school.
If Congress intended by its legislation to put a stop to work under the contracts, it must also have contemplated that by reason of the breach of the contract the Government would be obligated to pay the plaintiff to the extent of the loss which was the necessary consequence of the breach by the United States; and one of these losses is the profit Avhich the plaintiff would have realized had not the contract been breached.
We can not assume that Congress intended to deprive the plaintiff of the rights which it had under the contract, or that it would undertake to deprive a citizen of his rights under the law in existence at the time of the execution of the contract. To hold otherwise would be to charge the Congress with a violation of the principles of equity and justice.
A judgment will be entered for the plaintiff in the sum of $62,714.55.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.