Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff is an assignee for creditors of the Murch Brothers Construction Company, a Missouri corporation, which entered into and performed a contract involved in this suit. No issue is raised as to the formality of the contract. The decision turns upon the construction of •certain articles of the same and the specifications for the work to be performed thereunder.
The contract obligated the contractor to furnish all labor and materials, and perform all work required to erect six buildings known as Air Corps Barracks at Randolph Field, Texas. The consideration was $1,223,000, which has been paid. The items in this suit are for extra work. Five of the buildings were designed to house two hundred and fifty men, the remaining one to accommodate three hundred men.
The five so-called “two hundred and fifty man barracks” were alike in design and construction. The “three hundred man barracks” was substantially the same except as to capacity. A single set of specifications identified as #8446-D ■covered the descriptive details relating to all the buildings.
Paragraph 192 of specifications 8446-D contained the following provision as to shelving:
192. Shelving. — The shelving shall be of wood as hereinbefore specified, and constructed as shown on detail drawings. The countershelves shall be of ash, built-up of strips lYs" thick.
Note. — Provide the following quantities of No. 1 common yellow pine or Douglas fir, dressed) lumber for knock-down shelving, including necessary nails complete for storerooms in basement. This shelving is not to be erected under this contract.
Boards, 1" x variable widths_ 2, 700 B. M.
Posts and rails, 2” x 4", variable lengths_ 1,700 B. M.
Bails, 1" x 4”_ 500 B.M.
*645 The contractor began work on “the three hundred man” barracks and during the course of construction asked the Constructing Quartermaster to furnish him with the dimensions and quantity of lumber to be furnished under the ■quoted specification #192.
The Constructing Quartermaster, acting under the belief that the contractor’s request concerned only the three hundred-man barracks, stated the quantity as 4,900 feet board measure. Subsequently the contractor was required by the Constructing Quartermaster to furnish for each of the remaining five buildings the same quantity of shelving lumber. The contractor protested, but did furnish the 24,500 feet exacted and for this the sum of $765.35 is asked. The Quartermaster General approved the action of the Constructing Quartermaster.
Specification #192 is not as specific as it could have been made and the plans for the five “250-man barracks” do not show this quantity of shelving to be placed therein. The specification distinctly points out that shelving is required for the storerooms in basement. Each building was provided with storerooms, and it is apparent that the Constructing Quartermaster was not intending to provide for all the buildings when he gave the estimate. The plaintiff must have known this, for as an experienced contractor he would .have known that the 4,900 feet of lumber were wholly inadequate for all the buildings.
To allow recovery for this item the court would, have to ignore the following provision of the specifications:
19. Drawings and Specifications Go-operative: The drawings and specifications shall be considered as cooperative and work and material called for by one and not mentioned in the other shall be done or furnished in as faithful and thorough a manner as though fully, covered by both.
This item is not allowed.
A note on drawing 621-317 reads as follows:
Safety treads to be used on all interior concrete stairs; to be approximately 3yz inches wide and to extend to within 6 inches of either end of treads.
*646 The contracto!’ contends that under this specification he was required to and did perform work additional to the requirement of the contract and specifications. The sum claimed is $406.80. An item of $8.95 for placing safety-treads on the exterior steps of the buildings is conceded to be due the contractor.
The issue as to the above item seemingly centei’s upon whether the stairs between porches attached to the buildings were or were not interior stairs. From the standpoint of fact the stairs involved were not interior ones. The Quartermaster General predicated his ruling that they were interior ones upon the fact that the stairs were partly under cover. The same official allowed an extra payment for placing treads on certain exterior steps, not in any substantial particular different from porch stairs.
The record sustains the findings that the porches were outside the main buildings and were not inclosed. The defendant relies upon a technical definition of the word “interior”, and, in addition, cites the adverse ruling of the Quartermaster General. The ruling of the Quartermaster General is not supported in fact or by the terms of the contract. The item falls under the decision of this court in the case of M. A. Long Company v. United States, 79 C. Cls. 656. Plaintiff is entitled to judgment for this additional work of $406.80.
Specification H-37 is as follows :
H-37. Painting —Before covering is applied, all pipe castings, sheet iron, etc., shall be thoroughly cleaned and painted with two heavy coats of the best quality black graphite paint as approved by the C. Q. M.
The above specification contained additional provisions for painting other finished portions of the contract work. They have no connection with paragraph H-37. Plaintiff contends that the absence of a comma after the word “pipe” simply obligated the contractor to paint “pipe castings” and not pipes. Conflicts appearing in contract specifications with respect to an item obviously an essential element of the contract work are not to be determined in all in *647 stances upon tbe question of punctuation. Ewing v. Burnet, 11 Pet. 41.
The piping involved is heating pipes in connection with the heating plants. It was to be covered by asbestos. It is inconceivable that the contractor was misled by the above specifications, and manifestly he must contend for an extremely technical construction of the specifications to sustain the argument. In addition to the fact that the record discloses that no such trade term as “pipe castings” exists, paragraph 233 and subparagraph 4 of H-37 required this painting. The item will not be allowed.
The Commissioner of this court in Finding 7 details the facts with reference to what we may term the steel item. The defendant did not and does not now except to the finding as reported to the court. It is conceded that the extra steel used because of the change order “B” of September 25, 1930, due exclusively to defendant’s change in the elevation, of the excavations for the footings of the buildings involved, amounting to 30.95 tons, was paid for by the defendant.
The plaintiff insists, however, that in addition to the 30.95 tons of steel taken over by the defendant and paid for, it was compelled to and did furnish the defendant with 25 tons additional because the defendant contended that only 5.95 tons of the 30.95 tons delivered were suitable for Government purposes, the additional 25 tons being delivered under defendant’s order to another Government contractor.
The defendant challenges the correctness of plaintiff’s contention and asserts that the 25 tons of steel delivered to the other Government contractor were part of the 30.95 tons theretofore paid for by the defendant. The findings do not support the defense interposed. It was the defendant’s change order “B” which compelled the plaintiff to reduce by cutting the lengths of the steel called for by the plans and resulted in the surplus steel involved. It is not denied that this surplus steel was delivered to the Government officials and it is impossible to reconcile a conflict in the testimony upon any other basis than the fact that there were available to the Govermnent proper rec *648 ords to prove precisely what steel was furnished by the plaintiff to the other Government contractor, when it was-furnished and who paid for it.
The fact that only a small tonnage of the steel delivered to the defendant proved useful warrants an inference that the remaining nonusable steel would hardly be furnished to another contractor and delivered to it at the same place and on the same premises when the plaintiff was performing its contract. The defendant derived no express authority from the contract involved to require the plaintiff' to deliver the extra steel, and none may be implied. Recovery under this item is allowable under the following cases: Weller Construction Co. v. United States, 61 C. Cls. 261 Gearing v. United States, 48 C. Cls. 12. Included in the judgment will be the sum of $1,750, the actual cost of this steel to the plaintiff.
In connection with the foregoing, plaintiff seeks to recover the sum of $750, the labor cost of cutting to its proper lengths the steel above mentioned, in accord with change order “B.” We think the settlement of the parties embraced in change order “B” covered the transaction in its entirety so far as the 30.95 tons of steel are concerned (Finding 7). The change order covered the credits and debits arising from its issue, and the parties accepted it.
The final item in suit relates to expansion joint material (Finding 8). The facts with relation to this item warrant the, award of judgment for the amount claimed. Expansion joints were provided for in the plans “in interior and porch floors” and nowhere else. To exact their placement as was done, i. e., requiring the contractor to place in the exterior basement walls two separate columns and expansion joints between them, was work outside the contract and specifications.
The Quartermaster General allowed the contractor $71.28 for the additional reinforcing steel which this additional work required, but refused to allow any further sum for the expansion joints. It is difficult to reconcile the two rulings, and to so rule we think was a serious error. In addition to this, the Constructing Quartermaster did not *649 pass upon this controversy; he referred it to the Quartermaster General and it was the latter official who determined it in the first and last instances. The contractor was entitled to a ruling from the Constructing Quartermaster under the contract. The item amounting to $2,186.90 is. allowable under the following precedents, and will be included in the judgment: Levering & Garrigues v. United-States, 73 C. Cls. 508; United States v. Spearin, 248 U. S. 132; Whitlock Coil Pipe Co. v. United States, 72 C. Cls. 473; Long Company v. United States, supra.
Judgment in the total amount of $4,423.93 will be-awarded the plaintiff. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge;: and GreeN, Judge, concur.