Hay, Judge,
delivered the opinion of the court:
On June 29, 1907, the claimant and the United States entered into a written contract, whereby, among other things, it was agreed that certain meats were to be delivered “ in any desired quantities” at the navy yard, Pugent Sound, or to vessels at the navy yard, as may be required from day to day during the fiscal year ended June 30,1908, by pay officers of the various vessels. The amount of meat was to be 165,000 pounds, more or less.
The specifications provided as follows:
“ The quantities called for above are only estimated, and the right is reserved to exact more than the amount ot any article included in the above class at the contract price, or to accept less than the full amount thereof, as the needs of the public service may require.”
The contract also contained this provision:
“It is hereby mutually and expressly covenanted and agreed by and between the parties hereto, that the article or articles to be furnished or services to be performed under this contract shall conform in all respects to the requirements of the specifications hereunto annexed, which specifications, the ‘ conditions,’ and the ‘ instructions to bidders,’ printed on *433 the proposal of the party of the first part, shall be deemed and taken as forming a part of this contract with like operation and effect as if the same were incorporated herein.
The contract was signed on behalf of the United States by the Chief of the Bureau of Supplies and Accounts of the Navy Department. In August, 1907, the Navy Department, by order of the President, determined to send the Atlantic Fleet around the world. On January 8, 1908, the Bureau of Supplies and Accounts of the Navy Department advised the claimant that some of the vessels of the Atlantic Fleet would dock at the navy yard, Puget Sound, and requested that the claimant advise the bureau of the method it would adopt in supplying these vessels with meats, and calling the attention of the claimant to the terms of its contract, which provided for deliveries to be made “ at the navy yard, Puget Sound.” The claimant refused to supply ships of the Atlantic Squadron under their contract. The Bureau of Supplies and Accounts thereupon notified the claimant that the general storekeeper had been directed to purchase on claimant’s account. Whereupon the claimant furnished the meats to the ships of the Atlantic Fleet which docked at the navy yard, Puget Sound, under protest, and was paid for said meats at the contract rates. Twelve vessels of the Atlantic Fleet docked at the navy yard, Puget Sound; of these the plaintiff supplied nine with meats. The claimant furnished the vessels of the Atlantic Fleet 200,983 pounds of meat, which cost it $21,767.80, and received for the same the contract price, which was $17,531.71. It also appears that the claimant furnished, under its contract, about 700,000 pounds of meats to other vessels of the Navy and to the navy yard.
It is now insisted upon by the plaintiff that its contract only required it to furnish meats to the vessels of the Pacific Fleet which might dock at the navy yard, Puget Sound, during the fiscal year, and that it could not be required to furnish meats at contract rates to the vessels of the Atlantic Fleet which docked at the navy yard, Puget Sound, and that it is entitled to recover from the Government the market price of all meats furnished by it to the vessels of the Atlantic Fleet, less the amount heretofore paid, based on the contract price.
*434 The contract entered into by the plaintiff nowhere mentions vessels of the Pacific Fleet, nor does it appear from the evidence that there was ever any understanding that contractors, when making contracts for the furnishing of naval supplies, could only be required to furnish them to the vessels of certain fleets. The plaintiff in this case, for the purposes of its case, chooses to assume that its contract applies only to the vessels of the Pacific Fleet. It will not be denied that if, during the fiscal year for which the plaintiff’s contract ran, twelve or twenty vessels had been added to the Pacific Fleet it would have been bound under its contract to supply them with meats if they had docked at the navy yard, Puget Sound. This being so, the plaintiff’s contention that it was called upon to furnish an unreasonable quantity of meat falls to the ground, especially when it appears from the record that it furnished to the navy yard, Puget Sound, about 400,000 pounds more of meats than the quantity mentioned in the contract
The amounts of meat to be furnished by the contractor depended upon the determination of the Chief of the Bureau of Supplies and Accounts of the Navy Department. His decision as to the amount of meats to be furnished was final; the contract expressly so provides; and unless the contractor had been required to furnish a totally unreasonable amount, or unless bad faith was shown, the contractor can not complain. This is the principle laid down in Brawley v. United States, 96 U. S., 168, 172, where the meaning of the words “ more or less ” is discussed, and where it is stated:
“If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions. As, if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that quantity with slight and unimportant variations, ■ but by what the receiving party shall require for the use of his mill; and the variation from the quantity named will depend upon his discretion and requirements so long as he acts in good faith.”
*435 In this case the words “ more or less ” are supplemented by the stipulation above set out, to wit: “ The quantities called for above are estimated, and the right is reserved to exact more than the amount o.f any article included in the above class at the contract price, or to accept less than the full amount thereof, as the needs of the public service may require.” This stipulation gives the qualifying words a broader scope, and the contract must be governed by this stipulation. The contract lodged in the Chief of the Bureau of Supplies and Accounts the right to fix the quantities of meat which the contractor had to furnish for the requirements of the public service. It is not competent for this court to go back of the judgment of the Chief of the Bureau of Supplies and Accounts and to reverse his action unless there is allegation and proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith. United States v. Gleason, 175 U. S., 588, 607; see also Kihlberg v. United States, 97 U. S., 398. In this case it is not suggested that there was any bad faith on the part of the officer.
In effect, the plaintiff in this case is asking that he be allowed not to perform his contract on the ground that he lost money by the transaction. The plaintiff does not contend that its contract was impossible of performance by reason of the act of God, or that it was rendered impossible by law, or by the acts of the public enemy, or that it was rendered impossible of performance by the conduct of the Government. The contractor can not be heard to urge that the pecuniary result which the contract has produced has not come- up to its expectations. Simpson v. United States, 172 U. S., 372, 379. After the contract was made the price of meats went up, and now the contractor seeks the aid of this court to enable it to recoup its pecuniary losses, losses for which the defendants are in no wise responsible. Had the price of meat gone down instead of up, and had the defendants refused to take their supplies of meat from the contractor, and had bought their meats in the open market, and thus breached the contract, is there any doubt that the contractor would have and could have successfully main *436 tained a suit against the defendants for whatever amount it would have lost by the failure of the defendants to fulfill their contract?
For the foregoing reasons the petition of the plaintiff must be dismissed, and it is so ordered; and judgment is rendered in favor of the United States against the claimant for the cost of printing the record in this case in the sum of $189.81, to be collected by the clerk as provided by law.
Downey, Judge, Barney, Judge, and Campbell, Chief Justice, concur.
Booth, Judge, took no part in the decision of this case.