DowNex, Judge,
delivered the opinion of the court:
The plaintiff entered into a contract with the defendant, represented by the Secretary of the Interior, for the furnishing of labor and material and the construction of a dam and accessory structures on the lower Yellowstone River, a part of a reclamation project, and after a part of the work had been done, during which there was much delay, the contract was suspended, the contractor’s plant taken over, and the work completed by the United States.
The plaintiff seeks to recover for the value of work done and not paid for, retained percentages, value of plant, camp, etc., taken over, lumber taken and not paid for, and alleged experimental work not within the contract obligation. The defendant, by counterclaim, seeks to recover a large amount as the alleged cost to-the United States of completing the work in excess of the contract price. The plaintiff alleges that the suspension of the contract was unwarranted and in a *587 replication to tbe counterclaim it alleges that the United States, in the completion of the work, departed from the specifications and did work of a wholly different character from that required by the contract.
It is contended by the plaintiff that the contract was not suspended (a term which seems to be peculiar to the Reclamation Service) by one authorized so to do — that is, the Secretary of the Interior. The procedure in connection with the suspension is set out in full in the findings, and therefrom it appears that the Secretary of the Interior authorized the action taken and thereafter approved it. The argument is that the power to suspend was in the Secretary, that he did not in fact suspend the contract, but that he authorized the engineer to suspend, and that such authority was based upon inaccurate information.
The Secretary of the Interior, as well as most Government officials having to do with varied and extensive governmental activities, must of necessity in many instances act through subordinates. We do not understand this proposition to be questioned, but rather the contention is that the Secretary did not in fact act, but authorized others to act, in effect delegating to them a discretion vested in him alone. If he had categorically directed one of the engineers to notify the contractor that its contract was suspended, no question would be made because he acted through a subordinate, but because of the manner of his action the question arises.
The work is shown to have been in Montana. The Secretary of the Interior and the Department of the Interior are located in Washington. Four engineers had to do with the work in different supervisory capacities. By them, through the Director of the Reclamation Service, he is informed that the president of the plaintiff company has refused to proceed with the work, and authority is asked to suspend the contract “in case he should not change his mind.” The condition quoted implied no discretion to be vested in the engineers. It rather contemplated an opportunity to the plaintiff to escape final action and sought to avoid the receipt of a positive order to suspend from the Secretary after, perchance, the plaintiff had by his action removed the cause therefor. The Director of the Reclamation Service, com *588 municating the telegram of the engineers to the Secretary, recommended, “in order that the engineers may be able to act promptly should emergency require, as indicated in the telegram,” that “ the engineers be authorized to suspend the contract,” etc. The emergency “as indicated in the telegram” plainly referred to the contingency that plaintiff’s president “should not change his mind” as to proceeding with the work. This recommendation was approved by the Secretary and “ authority granted as recommended,” of which action by the Secretary one of the engineers was informed by wire.
In the meantime the president of the plaintiff company had been notified by the chief engineer that if he did not proceed with the work by noon of the following day recommendation would be made that the contract be immediately suspended and on the following day, presumably after noon, “ by authority of the Acting Secretary ” the contract was suspended.
There is no apparent contingency or uncertainty in the whole transaction except such as was dependent upon the action of the plaintiff. The ■ situation was as well understood and defined as if the Secretary had instructed one of the engineers to suspend the contract if the contractor did or refused to do a specific thing. Such a direction would have involved no delegation of discretion and would have been only such departure from a specific unconditional direction as the facilitating of business supervised from a distant point requires.
But if there remains any infirmity in the procedure up to this time, it is found that report was thereafter made to the Secretary of the suspension of the contract with the recommendation as to the completion of the work, at which time, the plaintiff having in the meantime protested in writing, the Secretary specifically ratified the action of the engineer in suspending the contract. We must conclude that the suspension was the act of the Secretary.
It is further contended that the suspension was not justified by the facts. We think we have no occasion to discuss this matter, since the paragraph of the specifications on the *589 subject of suspension of the contract contains the provision that—
“ In the determination of the question whether there has been such noncompliance with the contract as to warrant the suspension thereof, the decision of the Secretary of the Interior shall be binding upon both parties.”
It is not competent for this court to review the action of the Secretary in the absence of an allegation and proof of bad faith or fraud or mistake so gross as to justify an inference thereof. United States v. Gleason, 175 U. S., 588; Carstens Packing Co. v. United States, 52 C. Cls., 430; Fitzgibbon v. United States, 52 C. Cls., 164; Plumley v. United States, 43 C. Cls., 266 and 226 U. S., 545, and cases cited.
Upon this feature of the case it is also urged that the information given the Secretary as to the refusal of the contractor to proceed with the work was incorrect and that the Secretary therefore acted on inaccurate information. The contention, if of force, must inevitably lead to the conclusion that the Secretary had no right to rely and act upon the report of the engineers in charge, but in every such case mus] first investigate the facts for himself or subject his action to review and possible annulment.
All contracts such as these necessarily contemplate supervision of the work by subordinates. This contract, no less than is usual, so contemplates. The specifications refer in terms to the chief engineer of the Reclamation Service or any of his authorized assistants, and it would indeed be a strange situation if, when a report is made to the Secretary by the chief engineer, the supervising engineer, the consulting engineer, and the project engineer, he must then, without any reason to assume bad faith or dereliction of duty on their part, discredit their report and investigate for himself before he can act. But, further, it seems to us that to make effectual the power given the Secretary to determine whether there has been such noncompliance with the contract as to warrant the suspension, he must be permitted to determine for himself the sufficiency of the evidence of such noncompliance. He acted, presumably in good faith, on such evidence as was satisfactory to him, and his action, at least under the facts shown here, is not subject to review. Our conclusion must *590 be against the contentions of the plaintiff as to the suspension of the contract.
The determination of the question presented as to the authorized suspension of the contract has been important from the standpoint of correct conclusion rather than as affecting the final result, for we have found that in the completion of the work after the suspension of the contract the United States did not substantially comply with the specifications but deviated materially therefrom. This finding precludes a recovery by the defendants on the counterclaim and, on the whole case, disregarding some technicalities which might arise under the pleadings, entitles the plaintiff to a recovery on some of the items sued for. California Bridge & Construction Co., 245 U. S., 337.
In this view of the case the plaintiff is entitled to recover the items of $14,282.50, for work done and not paid for, retained percentages, etc., about which there seems to be no dispute.
The value of the plant, camp, and equipage taken over, at the time of the taking, is found to be $12,719.87. Its remaining value when the work was completed, is not found because not shown.
The rules applicable in such cases dependent upon the finding as to the proper cancellation of the contract and the completion of the work in accordance therewith are familiar. What is the proper rule in this case, the contract having been suspended by proper authority but the work not completed in substantial compliance therewith? The authority of the contract was, in case of suspension, to take possession of the plant and “ use the same to complete the work,” meaning, evidently, the work or such work as the United States was authorized to complete at the expense of the contractor. And, conversely, it would seem that the United States had no right to use the contractor’s plant for some other work which it might undertake different from that which the contractor was required to do. The conclusion reached as to the counterclaim of the defendants, predicated on the finding as to noncompliance with and material deviation from the specifications would seem to require the conclusion as to this item that the plaintiff is entitled to the *591 value of the plant at the time it was taken over. There could bo no question in any event about the item of $281 for subsistence supplies.
Aside from the question raised as to the statute of limitations as against the item of $3,310 claimed for lumber taken but not paid for, by reason of the fact that it was first declared on in the amended petition, filed September 20, 1917, and not in the original petition, a question which need not be decided, it is not so proven as to justify a recovery thereon. Its injection into the case seems to have been an afterthought and the evidence in support of it is far from satisfactory. The other items as to alleged experimental work required and for which no payment was made is not satisfactorily proven. The circumstances seem rather to be against the plaintiff’s contention.
On the whole case we conclude the plaintiff is entitled to recover $27,283.37 and judgment is awarded for that amount.
Hay, Judge, Booth, Judge, and Campbell, Chief Justice, concur.