Downey, Judge,
delivered the opinion of the court:
The plaintiff sues upon a contract made July 8, 1915, with the Panama Canal, for the delivery at Colon of 300,000 pounds of colored cotton waste with option in the latter to order such additional quantities as might be required not exceeding 50 per cent of the estimated quantity. The contract was an annual contract, i. e., for a fiscal year, and the estimated quantity referred to in the contract evidently was to meet the estimated needs for the fiscal year ending June 30,1916.
There were deliveries, acceptances, payments, acceptances without payment, deductions of liquidated damages for delay, rejections and purchases in the open market against the account of the contractor. The case involves a determination of the proper items of debit and credit as between the parties and a statement of account. Details as to the various transactions are set out in the findings and will not be repeated here except as they naturally enter into the discussion of questions involved.
The construction of the contract in one respect is material. it refers in its preamble to “ Circular Invitation No. 922,” and in Article I it recites that the contractor agrees to furnish “in accordance with the requirements of the invitation for proposals and the specifications contained in circular of the Panama Canal No. 922, dated April 26, 1915, which invitation and specifications are made a part hereof,” but in describing what it is that the contractor is to furnish the language used is “ 300,000 pounds, waste, cotton, colored, in accordance with sample ‘A’ submitted by the contractor with proposal.” It is contended by the defendant that the waste to be furnished was. not only to be *22 in accordance with the sample submitted but also in accordance with certain specifications; but the specifications mentioned in the. contract are said to be specifications contained in Circular No. 922, and it is shown in the findings that Circular No. 922 is not in evidence. Certain specifications called “ standard specifications for waste ” contained in a small pamphlet numbered 704 are found in the files, and the record shows they were introduced in connection with the testimony of one of the witnesses, but it is not shown that they are the specifications which were contained in Circular No. 922 or were ever submitted to this contractor. It is found as a fact that the parties treated the contract as a.contract to furnish goods according to bid sample and we are of the opinion that it must be so construed.
The inference from the record is that in all these transactions some sort of specifications were probably sent to the bidders for their guidance, but it appears that in every instance with which we have to do in this case the bidders were requested to furnish samples with their bids, and the bids were predicated upon samples furnished by the bidders in every case except one in which the bidder, being then engaged in furnishing waste under a contract, thought it unnecessary to submit another sample. This procedure was the natural one in view of the fact that different grades of waste are not “ standard,” and the best method of determining the quality of the article which the bidder was proposing to furnish was to require him to submit a sample with his bid. The language of the contract in its reference to specifications is not the only respect in which inappropriate phraseology is used, and there is ample ground for the inference that in this case, as in many other instances coming to our attention in connection with governmental contracts, the unfortunate practice prevailed of using a form prescribed for the general purpose without modifications to suit the particular case. There is no question as to the fact that the contract was treated by the parties as a contract to furnish waste in accordance with a bid sample, and it must be so construed.
Several of the transactions under this contract are not for consideration because the goods were delivered, accepted, *23 and paid for. The first item as to which there was any controversy was as to a shipment under order No. 62743 in connection with which the plaintiff was charged with liquidated damages in the sum of $32.42 because of 19 days’ delay in delivery which, out of a total delay of 36 days, it was determined by authorized officials of the Panama Canal was chargeable to the plaintiff. Plaintiff returned the voucher because of said deduction, protesting that it was not responsible for the delay, and the amount conceded to be due, namely, $1,673.83, was never paid.
The matter of deductions by way of liquidated damages because of delays in delivery is involved to a greater or less extent in all of these transactions, and the conclusion as to one will suffice as to all. The contract provided that one-tenth of 1 per cent of the contract price of each article should be deducted as liquidated damages for each day’s delay in delivery but that for delays not the fault of the contractor but caused by the Panama Canal or because of other specified causes, the contractor should be allowed an extension of time equivalent to the delays so occasioned, the extent of such delays for which the contractor was to be granted an extension of time to be determined by the governor of the Panama Canal or his authorized representative. The principle applicable has been thoroughly settled in many cases. The parties created a tribunal to determine the responsibility for delays, and in the absence of bad faith or such gross error as justified the inference of bad faith, they were bound by the determination of that tribunal. The principle is so well established that it is not necessary to attempt to cite all the authorities sustaining it. We refer to United States v. Gleason, 175 U. S., 588; Carstens Packing Co. v. United States, 52 C. Cls., 430; Fitzgibbon v. United States, 52 C. Cls., 164; Plumley v. United States, 43 C. Cls., 266; 226 U. S., 545; and cases cited.
Order No. 63475 for 25,000 pounds of waste, on which there was a delivery of 25,922 pounds net, amo.unting at contract price to $1,814.54, and a deduction of $7.26 on account of four days’ delay found to be chargeable to the contractor, is another case in which the deduction because of delay was *24 the only question involved. On account of that shipment there was conceded to be due the plaintiff $1,807.28 which was not paid.
The first rejection occurred in connection with order No. 64226, upon which there was a delivery of 25,173 pounds net, the order having been for 25,000 pounds. It was very shortly after the rejection of this shipment that plaintiff received from J. E. Lawton, theretofore connected with the Washington office of the Panama Canal and then associated with Ward & Co., of Washington, the latter set out in Finding VI. This letter probably caused much of the trouble between the parties as to the further performance of this contract, for it reached the plaintiff at about the time they were first informed of the rejection of this shipment, and they were suspicious, probably not without apparent reason, that there was some connection between the rejection of their goods on the Isthmus and the writing of this letter. The writing of such a letter under the circumstances was unquestionably reprehensible for the use against the United States, as too frequently happens, by one formerly connected with the public service, of information acquired therein is certainly .to be condemned. But to the credit of the Washington office of the Panama Canal and the War Department it is to be said, as shown 'in the findings, that when attention was called to this letter a careful investigation was made not only in Washington, under direction of the Secretary of War, but on the Isthmus, under direction of the governor, and the conclusion was reached that there was no possible connection between the writing of that letter and the rejection of goods on the Isthmus. The record outside of the letter itself fails to show any relationship whatever between the two transactions, and it can not justify a conclusion of bad faith in connection with the rejections.
Under order No. 64690, directing the shipment of 50,000 pounds of waste, shipment was made of 80 bales of the net weight of 50,076 pounds, which upon receipt and inspection on the Isthmus were rejected as inferior to requirements. What has been said with reference to rejection of the former order applies equally to this one, and it may be added that there is nothing in the record as to either rejection justify *25 ing a review by tliis court of the action of the officials of the Panama Canal in that respect.
On No. 65090 directing the furnishing of 25,000 pounds of waste, shipment was made of 39 bales of a net weight of 24,932 pounds, which were accepted. There •was a charge against the contractor on account of liquidated damages, for 26 days of delay, of $45.38" and also a charge against the contractor of $13.50 on account of expense of an unnecessary inspection trip made by an inspector of the Panama Canal to the plaintiff’s plant. The deduction on account of liquidated damages is not for review, and that amount is. to be deemed as properly chargeable against the contractor. We find no provision in the contract which justified the charge for an unnecessary inspection trip. Deducting from the amount of this shipment at contract price the amount charged as liquidated damages there was due the contractor $1,699.86, which was not paid.
The shipments thus far discussed covered the 300,000 pounds specified in the contract, and it may be well to consider the further procedure with reference to these transactions before taking up subsequent matters. Out of Order No. 64226 the Panama Canal used 1,267 pounds after rejection of the order, and out of Order No. 64690 after rejection it used 23,911 pounds, a total of 25,178 pounds. After these rejections the Panama Canal had proposed to the contractor to accept the shipments at 75 per cent of the contract price, which proposition was rejected by the contractor, and in its stated account the defendant credits the contractor with this amount of waste at 75 per cent of the contract price. There can scarcely be any justification for this adjustment as to the waste used, and indeed counsel for the defendant upon argument of the case admits that that basis 'is not tenable and that the contractor should be credited with the amount of waste used at the contract price. We do not agree with this view of the situation. The defendant might have accepted the waste and paid for it at the contract price, but it saw fit to reject it and after rejection to appropriate it to its own use. It became bound, therefore, to pay not the contract price but the value of the goods. It appears in the *26 findings, a matter hereinafter to be mentioned, that the remainder of these two shipments was sent to New York and sold in the open market for the account of the contractor and was sold at 9 cents per pound. We think this fairly establishes the market value of this waste and that the plaintiff is entitled to recover the value of said 25,178 pounds at 9 cents per pound, being $2,266.02. Of the remainder of said two shipments the defendant sold in New York 51,711 net pounds at 9 cents per pound, amounting to $4,653.99, as against which it charged expenses of transportation, advertising, handling, etc., amounting to $267.57, and it goes without argument that the plaintiff is entitled to credit in the net amount of $4,386.42.
The plaintiff not having furnished other goods in replacement of that rejected under orders No. 64226 and No. 64690 dated April 25, 1916, the Panama Canal by order No. 67043 dated April 25, 1916, purchased of Dexter P. Lillie Co. “75,000 pounds colored cotton waste, per our specification No. 704 and sample submitted by you ” at 10.4 cents per pound, which it treated as a replacement of orders No. 64226 and No. 64690, and charged against the contractor the additional cost of 3.4 cents per pound. It also charged against the contractor $161 as liquidated damages for 92 days’ delay on account of order No. 64226 and $248.50 as liquidated damages for 71 days’ delay on account of order No. 64690. If these purchases were authorized against the account of the contractor and justified a charge back under the facts found, it may be said that there is no room for afiy question as to the charges for liquidated damages for delays. Because of the unsatisfactory condition of the record as to this purchase from the Lillie Co., there is perhaps some room for question as to the right to charge back the excess cost against this contractor. It might be inferred from the record that before this order was placed with the Lillie Co. bids had been solicited, so that there was competition, and that the goods purchased from the Lillie Co. were substantially the same goods which the contractor had failed to furnish, and that the whole procedure was such as justified a charge back. However, the record does not show that *27 the Lillie Co.’s bid. was submitted in competition by virtue of any advertisement or request to bidders, and it is not very satisfactorily shown that the sample upon which the Lillie _ Co. predicated its bid was substantially of the same quality as plaintiff’s bid sample. The findings set out a communication addressed by the Panama Canal to the Bureau of Standards and the reply of the Bureau of Standards from which the conclusion is probably justified that bids other than that of the Lillie Co. were received and that there was a comparison by the Bureau of Standards of the Lillie sample with plaintiff’s bid sample and that the Lillie Co.’s sample was substantially of the same quality or at least superior to plaintiff’s bid sample.
In this connection it is perhaps desirable to consider the use of a particular word in the contract and the meaning to be given it, since there are also other transactions to be hereafter mentioned whose status must be somewhat affected by the interpretation to be placed upon the contract in this respect. We take it to be the well-established rule that in transactions such as those involved in the instant case purchases in the open market as against the account of the defaulting contractor must be purchases of substantially the same articles, so made as reasonably to conserve and not be unnecessarily prejudicial to the contractor and that the purchase of an article substantially different in quality, if in connection therewith a higher price is paid therefor, does not justify a charge back against the defaulting contractor. The principle is well recognized, although the case is different in its nature, by the rather recent case of the California Bridge & Construction Co., decided first by this court, 50 C. Cls., 40, and affirmed by the Supreme Court in 245 U. S., 387. It is in this connection that we must consider the effect, if any, of the use in the contract of the word “similar.” The contract does not contain any such specific provision as is frequently found with reference to open-market purchases as against the account of the contractor, but it recognizes such a right and the question is whether or not the use of the word “ similar ” requires, in determining the rights of the parties, any departure from the ordinary legal rule. We take it that in dealing with contracts *28 for the furnishing of articles such as are here involved the purchase of a “similar” article would not necessarily be sufficient to justify a charge back against the contractor.
The contract, in its provision with reference to liquidated damages for delays, contains the language “ or until such time as the Panama Canal may reasonably procure a similar article elsewhere ” and in its further provision with reference to a charge back against the defaulting contractor uses the language “ by reason of any default on the part of the contractor, purchases similar articles elsewhere.” The conditions which would result if we were to give force to the broad meaning of the word similar in a case like this is sufficient to at least raise a serious question about whether such a use of the word was intended. It appears that different grades of waste are in no sense “ standard ” grades, and if the purchase as against the account of the defaulting contractor of a similar article was sufficient to justify a charge back, the contractor in default under his contract requiring the furnishing of a very low grade of waste might be charged with the excess cost of a much superior grade purchased in the open market because it could scarcely be disputed that any grade of colored cotton waste is similar to any other grade thereof. Notwithstanding this condition we might be required to give force to the use of the word in its broadest interpretation if no other explanation thereof could be found. But we have already, in connection with another question calling for an interpretation of the contract, suggested the apparent use in this case of a form contract prepared for general purposes without modifications to suit the particular case. The contract repeatedly uses the word “ articles ” and also the words “ articles or materials to be furnished hereunder,” so that it is apparent the contract was not written with specific reference to the goods to be furnished in this instance. If, for example, the contract had been for a manufactured article which, as is frequently the case, was made by but one manufacturer and there was default in the performance of the contract, it would be plainly apparent that purchase of the same article in the open market against the account of the defaulting contractor could not be made, but if there could be found other articles made by other manufac *29 turers for the accomplishment of the same purpose and substantially the same in their construction and value it is quite apparent that there would be reason and necessity for a recognition of the right to purchase as against the defaulting contractor not the same but a similar article. We are of the opinion that the use of the word “ similar ” in this contract is of no particular significance and does not change the legal rule with reference to open market purchases as against the account of defaulting contractors.
Under the facts found with reference to this repurchase of the Lillie Co. it is to be admitted that the conclusion to be reached may not be free from doubt, but it is our judgment that the purchase was so made and of such a quality of goods as to justify a charge back against the contractor of the excess cost.
It appears that after the completion of the transaction, so far as the estimated quantity of waste to be furnished was concerned, the defendant elected further to order under its option to purchase such additional quantities as might be needed not in excess of 50 per cent of the estimated quantity, and we conclude that there was no doubt of the right of the defendant so to do. Pursuant thereto it placed with the plaintiff company three orders numbered 65822, 66441, and 67178 for 25,000 pounds each, as to all of which, without discussing in detail the facts found with reference thereto, it is sufficient to say the plaintiff, was in default. The right of the plaintiff to furnish under these orders was duly terminated by the Panama Canal as provided by the contract, and a purchase of 75,000 pounds of waste was made from O’Neil Bros, at 11 cents per pound and a charge of excess cost and of liquidated damages for delays in deliver}'- made against the plaintiff. It appears from the record as to this transaction that a bulletin was issued by the Washington office of the Panama Canal, addressed to nine concerns engaged in the waste business, requesting quotation of prices, that there were several bids with which samples were submitted, a submission of samples to the Bureau of Standards with the specific statement that an open-market purchase was to be made against the account *30 of the contractor, and that it was especially desired that purchase should not be made superior in quality to the plaintiff’s bid sample and a report by the Bureau of Standards that two samples submitted, one of which was that of O’Neil Bros., “ are equal in every way to the standard sample.” There was particular care used in this transaction to procure competition and to limit the purchase to the quality of goods the plaintiff was required to furnish, and we find nothing in the record which could raise any question about this transaction and its effect, unless it were to be said that the finding of the Bureau of Standards that the O’Neil Bros, sample was “ equal in every way ” to the plaintiff’s bid sample gave room for the assumption that it did not refute the idea that the repurchase was of superior quality. But upon all the facts found we have no doubt that as to this purchase there was authority to charge back against the contractor the excess cost and also liquidated damages for delays in delivery as indicated in the findings.
Another order, numbered 67696 and dated May 22, 1916, for 75,000 pounds of waste was addressed to the plaintiff, and the. plaintiff declined delivery thereunder. Thereupon the Panama Canal purchased from the Boyal Manufacturing Co., by order No. 71126, dated October 14, 1916, 75,000 pounds of waste at ll-J- cents per pound, as a replacement order against plaintiff’s order No. "67696. As to this transaction it is not shown that there was any notice requesting the submission of bids, but it appears that the Boyal Manufacturing Co. was then engaged in furnishing waste to the Panama Canal under an annual contract which had been let to it providing for the furnishing of 300,000 pounds of waste during the fiscal year 1917, and it submitted its bid upon the basis of the waste it was then furnishing under its annual contract, stating that its goods had already been passed upon favorably by the “ test department,” and it therefore deemed it unnecessary to forward a sample. We think it satisfactorily appears that the waste which the Boyal Manufacturing Co. was furnishing under its annual contract for 1917, and which was the basis of this repurchase order, although a sample was submitted subsequent to the bid, was of a superior quality to that which the plaintiff was required to furnish *31 under its contract. The report of the Bureau of Standards was to the effect that the Royal Manufacturing Co.’s waste was “ slightly superior ” to the bid sample. The testimony shows that the waste it was furnishing contained 65 per cent of white threads. The standard specification of the Panama Canal, which it is to be presumed was submitted to bidders for their guidance in furnishing samples and bids, provided for 50 per cent of white and colored threads, and the testimony shows, as indicated in the findings, that a greater percentage of white threads made a superior grade of waste. It seems thus the conclusion must be with reference to this transaction that there was no proper basis for a charge against the contractor of the exaess cost of this waste, and that conclusion must carry with it also the attempted charge of liquidated damages because of delay. The conclusion with reference to this matter upon this basis renders it unnecessary to give any consideration to the fact that this order was placed in October, 1916, long after the commencement of this action. The conclusions of law have stated in detail the result necessarily following in the adjustment of the accounts as between the parties, and there need not be repetition here.
The plaintiff is entitled to judgment in the sum of $5,424.16.
Graham, Judge, Hay, Judge, Booth, Judge, and Campbell, Chief Justice, concur.