## McFaddin Rice Milling Company, Plaintiff and Appellant, *v.* Maldonado, Defendant and Appellee.

### Appeal from the District Court of Ponce in an Action for Specific Performance of Contract.

No. 2717.—Decided February 6, 1923.

Contract—Mercantile Contract — Shipment — Construction.—Construing a mercantile contract for the purchase and sale of rice in which, with regard to the time and manner of shipment, the following was stipulated:

"When _____ship during April.

"How ship__by steamship."

*Held:* That although the mill was not situated on the coast, the word "ship" does not mean that the transportation may be by railroad, and that the words "by steamship" is not a mere prohibition to ship by sailing ship.

Id.—Id.—Performance.—If a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation, the terms of the contract must prevail. One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking.

Id.—Id.—Id.—As a general rule when a party expressly undertakes to perform some act his engagement casts upon him a duty the discharge of which cannot be excused by showing his inability by reason of the interference of third persons.

Id.—Id.—Id.—The abbreviation "c. i. f." is sometimes used in mercantile transactions, especially in England, for cost, freight and insurance. A seller under contract of sale containing such terms has first to ship at the port of shipment goods of the description contained in the contract; second, to procure a contract of affreightment, under which the goods will be delivered at the destination contemplated by the contract; third, to arrange for an insurance upon the terms current in the trade which will be available for the benefit of the buyer; fourth, to make out an invoice; and finally to tender these documents to the buyer so that he may know what freight he has to pay and obtain delivery of the goods if they arrive, or recover for their loss if they are lost on the voyage. Such terms constitute an agreement that the goods, provided they are in conformity with the contract, *shall be delivered on board ship at the port of shipment.*

Id.—Id.—Id.—In a mercantile contract, a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract.

The facts are stated in the opinion.

*Messrs. F. Manuel Toro* and *O. B. Frazer* for the appellant.

*Messrs. J. A.* and *A. S. Poventud* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

The plaintiff in this case, a corporation domiciled in the city of Beaumont, State of Texas, and the defendant, a resident of Ponce, Porto Rico, entered into a contract on April 19, 1920, for the purchase by the latter from the former of 300 pockets of rice for shipment c. i. f. during the month of April, 1920.

The rice was shipped from the port of Galveston on May 24, 1920, and the ship arrived at Ponce on June 15, 1920. The defendant refused to receive the rice on the ground that it had arrived too late; whereupon the plaintiff brought this action for the specific performance of the contract.

After the plaintiff had rested its case the defendant moved for a nonsuit and the trial court ruled on the motion as follows:

"Ruling on the motion for a nonsuit, the court sustains the motion on its third ground, that the complaint and the evidence are insufficient. The contract declared on required the shipment of the rice by steamship during the month of April, 1920, and the rice was not shipped until May 25th. Time is of the essence of the contract, which could be performed only by putting the goods on shipboard within the time agreed upon. For these reason, the court dismisses the complaint with costs. Let judgment be entered in conformity with this order."

The plaintiff appealed and assigned error as follows:

"1.—The court erred in interpreting the contract in the sense that the rice should be shipped by steamship during the month of April.

"II.—The court erred in holding that the plaintiff had not performed the contract.

"III.—The court erred in holding that time was of the essence of the contract."

We may consider the first and third assignments together, as both refer to the meaning to be given to certain words contained in the contract and to "time" as a material basis for the interpretation of the contract.

The contract reads as follows:

"Order No. Enc. A. April 10, 1920.—McFaddin Rice Milling Co.—Ship to José Maldonado.—At Ponce.—When.—How ship: Ship during April By steamship 300 pockets rice No. 121, at $11.25 C. i. f. 100# net, offer for confirmation.—A. Barasorda, by Díaz. José Maldonado.—Agreeable at $11.50 C i f. Accepted April 19, 1920. A. Barasorda, Díaz.—José Maldonado."

The evidence shows that the shipment of rice left the port of Galveston on May 24, 1920, and that the ship arrived in Porto Rico on June 15, 1920. When the defendant was notified that the rice was ready for delivery he wrote to the plaintiff a letter refusing to receive it, as follows:

"Playa Ponce, P. R., June 17, 1920.—Mr. Angel Barasorda, Ponce, P. R.—Dear Sir:—The purpose of this letter is to inform you that we leave for the account of the McFaddin Rice Milling Co. which you represent the 300 pockets of rice No. 121 shipped to us by steamship Gera now in port, for the reason that it has come too late.—Yours very truly, (Signed) José Maldonado."

The plaintiff answered as follows:

Ponce, P. R., June 18, 1920.—Mr. José Maldonado, Playa Ponce, P. R.—Dear Sir:—In reply to your letter of the 17th instant, contents of which have been duly noted, I wish to say that I can not accept your decision of leaving for the account of my principals the shipment of rice No. 121 on the ground that it has come too late, because the mill shipped the rice on the day following the acceptance of the contract, as may be seen from the railroad bill of lading, and the only steamer leaving Galveston after the date of the contract and until the merchandise arrived was the steamship Lake Gera which brought the rice for you."

The issue being thus joined, according to the terms of the contract and the facts, the question raised is whether the

court below interpreted correctly the literal meaning of the words used in the body of the contract in conformity with the intention of the contracting parties, and whether the element of time was, consequently, of the essence of the contract.

Section 1248 of the Civil Code reads as follows:

"Sec. 1248.  If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

"If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail."

The terms of the contract executed on April 19, 1920, are clear and precise.  It is drafted in commercial language which is always laconic, concise and to the point.  The contract was made on April 19, 1920, and it expressly stipulated the time of shipment of the merchandise and the manner of transportation in the following words:

"When_____ ship during April.
"How ship_____ by steamship."

The trial judge interpreted these words to mean that "the contract required shipment of the rice by steamship during the month of April" and that "the contract could be performed only by placing the goods on shipboard within the time agreed upon."  The appellant alleges that the judge considered the words "during April" in connection with the word "steamship" instead of connecting it with the word "when" and that thereby the meaning of the contract had been changed.  It seems that the appellant interprets the contract to mean that the seller should ship the rice "during April," meaning a shipment by railroad, and also that the rice should be transported "by steamship" and not "by schooner."  However, that interpretation is contrary to the literal sense of the contract and at variance with the very allegations of the complaint.

The words ''ship during April'' respond to the word ''when'' to denote the date of shipment, that is, the ''time'' within which the seller should ship the merchandise, and also refer to the means of transportation, for the verb ''embark'' (the exact equivalent of the word used in Spanish) both etymologically and grammatically means ''to put on shipboard'' and even in ordinary language can not refer to transportation ''by railroad.''

''Embark  *  *  *  From *em* and *bark*. To put into a ship. *  *  *  Although this verb is sometimes used ·to mean to put into a coach, train, etc., as in the phrase *the merchandise was embarked on the train,* such use is not permissible.'' Espasa, *Enciclopedia Universal Ilustrada Europeo-Americana,* volume 19, p. 913.

''Embark: To put something into a vessel.  *  *  *  From *em* and *bark*.'' Spanish Dictionary by M. Rodríguez Navas, p. 555.

''Embark: To place or put something into a vessel.'' Dictionary of the Spanish Language by the Spanish Academy, 1st edition, p. 383.

Embark means: ''To embark, to ship, to put on shipboard.'' New Velázquez Spanish-English Dictionary, First Print, page 216.

It may be seen form these definitions of the word ''embark'' that its use in the contract referred to denoted the means or manner of transportation and that the words ''by steamship'' made more clear the manner or means contemplated. But even if any doubt remained concerning the interpretation of the contract and if it should still be difficult to determine with certainty the intention of the parties, such doubts would be dispelled by the complaint; the second allegation of which is as follows:

''2.—That on April 19, 1920, the defendant, José Maldonado, bought from the plaintiff, represented by its agent in Ponce, Angel Barasorda, 300 pockets of rice No. 121 of 100 pounds each, at the rate of $11.25 a pocket, c i f Ponce, to be shipped from the port of Galveston, Texas, during the month of April, 1920.''

This is an admission which clearly denotes the following: 1st, time of shipment: during the month of April, 1920; 2nd, manner of transportation: by steamship, within the said time; 3rd, place of shipment: the port of Galveston, Texas. Nothing that we have found in the evidence shows the contrary, and much less that the words contained in the contract meant that the rice should be shipped by railroad at the plaintiff's mill during the month of April, 1920, as the appellant contends, or that the phrase "by steamship" was only a prohibition to ship "by schooner." The appellant also alleges that this being the correct interpretation of the contract and the mill being situated in Beaumont, Texas, whence the rice could not be transported by sea, the merchandise could not arrive at the port of Galveston in less than three or four days, and that the contract having been made on April 29, 1920, for shipment during April, it could not be shipped from the said port within that time, for there was left only one day of the month of April after the contract was signed. Indeed, under such circumstances compliance with the contract was a physical impossibility, but all of the argument of the appellant on this point is based on the false premise that the contract was made on April 29th, for the contract itself and the complaint show that it was made on April 19, 1920, there being yet eleven days of the month, which was the contemplated time necessary for transportation between Beaumont and Galveston and for putting the merchandise on shipboard.

The evidence shows, and it was admitted in the complaint, that the steamship by which the rice was shipped left the port of Galveston on May 24, 1920, and arrived at the port of Ponce on June 15, 1920. It is also alleged in the complaint that the plaintiff could not ship the merchandise before that time, notwithstanding all of its efforts to do so, the reason being that no steamship left for Porto Rico between that date and the making of the contract

owing to a strike of the longshoremen in Porto Rico. These being the facts of the case, we are bound to consider the element of "time" as of the essence of the contract and to decide whether or not it was the duty of the plaintiff to ship the rice from the port of Galveston during the month of April, 1920.

It is a well known rule that as a matter of law time is of the essence of contracts, but this rule is subject to some exceptions. It has also been admitted that it is not indispensable to stipulate expressly that time is the condition *sine qua non* of the contract in order that this element may be considered as of the essence of the contract, for this may result from its nature or from the circumstances of the case. In this case the time of shipment of the merchandise was stipulated and, therefore, was expressly fixed and not left to implication or inference; but if to this express condition we add the nature of the contract in question, which involved the purchase of an article of commerce whose market price fluctuates from time to time and sometimes in a day, a week or a month, and wherein the buyer upon closing the transaction has taken into account certain circumstances which although speculative are no less probable, with a view to a profit or margin on resale, assuming also a certain risk of possible loss, the principal basis of all of his speculation being the time that must elapse before the merchandise comes into his hands, it necessarily follows that time was of the essence of the contract in this case.

"In the contracts of merchants, time is of the essence. The time of shipment is the usual and convenient means of fixing the probable time of arrival, with a view of providing funds to pay for the goods, or of fulfilling contracts with third persons." *Norrington* v. *Wright,* 29 L. ed. 266, 370; 115 U. S. 188, and cases cited. *Cleveland Rolling Mill* v. *Rhodes,* citing *Norrington* v. *Wright, supra,* 30 L. ed. 920, 922; 121 U. S. 255.

"A contract for the sale of flour to be shipped by a steamer sailing during the month of February was broken where, although

the flour was delivered at the wharf ready for shipment during February, it was not fully loaded until March 3d, and the steamer sailed on March 8th, as ordinarily, in contracts of merchants, time is of the essence, since the time of shipment is the usual and convenient means of fixing the probable time of arrival with a view to providing funds or fulfilling contracts with third [persons." *Connell Bros. Co. v. H. Diederichsen & Co.*, 213 Fed. Rep. 737.

On the other hand, the appellant alleges that the delay in performing the contract was due to the fact that the steamship company at Galveston did not venture to send any steamer until the 24th of May, 1920, because there was a longshoremen's strike in Porto Rico. But the authorities agree that the reason alleged is not a legal excuse.

"If a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation, the terms of the contract must prevail.

"One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking." *Columbus Ry. & Power Co. v. Columbus*, 63 L. ed. 669, 249 U. S. 412; *United States v. Gleason*, 175 U. S. 588, 602, 44 L. ed. 284, 289.

"As a general rule when a party expressly undertakes to perform some act his engagement casts upon him a duty the discharge of which can not be excused by showing his inability by reason of the interference of third persons, and it is held that the seller is not excused from the performance of his contract to sell and deliver articles by reason of a strike interfering with his procuring the subject matter of the sale or increasing its cost to him." 23 R. C. L. 1335.

Besides, the plea that there was a strike in Porto Rico is a matter which appears only from the complaint and is not supported by the evidence; but assuming for the sake of argument that we could take judicial notice of such a fact, it is not a good defense or excuse, as shown before.

The last assignment made by the appellant is that the court below erred in holding that the plaintiff had not performed its contract.

The appellant alleges that the contract was for shipment c. i. f. 'and that under the general terms and usual conditions of this class of contracts the plaintiff performed the contract at the instant of delivering the merchandise to the railroad company.

In the body of the contract between the parties are found the letters c. i. f., which are the initials of the English words "cost, insurance, freight."

"C. I. F. An abbreviation of the words 'costs, insurance, freight," used in connection with commercial quotation and contracts to signify the inclusion in the price of the goods of all charges to the port of destination. Also an abbreviation of the words 'consular invoice free.' " 11 C. J. 765.

A contract containing this abbreviation is common in England in commercial transactions between merchants, but as it was not introduced into the United States until recently, the American jurisprudence on the interpretation of such contracts is not abundant. But in arguing this case the appellant maintains that under such a contract the duty of the seller is to deliver the merchandise to a carrier, take a bill of lading, secure a policy insuring the merchandise against maritime risk and tender the said documents to the buyer so as to insure delivery, and on this basis the appellant's brief is as follows:

In our case the evidence shows that the rice was shipped from the mill during the month of April and that it arrived at the seaboard, i. e., at Galveston, during the month of April, and any delay occurring thereafter was due to the fact that the company would not let its steamers sail for Porto Rico because of the longshoremen's strike. The evidence shows also that the seller obtained a bill of lading for the transportation of the merchandise to Ponce and also an insurance policy and forwarded these docu-

ments to the buyer through a bank, together with the corresponding invoice and draft. Under these circumstances, and it having been admitted that the rice was of the quality and class stipulated, there being no evidence to the contrary, the plaintiff's liability terminated when it delivered the merchandise to the railroad company. From that moment the rice became the property of the buyer and he assumed the obligation of paying for it, even in the extreme case that the rice never arrived in Ponce."

But the conditions pointed out by the appellant are not all of the conditions to be performed in a contract c. i. f., nor is its argument based on an accurate estimate of such conditions. The contention that delivery of the merchandise by the seller to a carrier is sufficient could be upheld if it had been expressly so agreed, but not on the implication that this was one of the general conditions of the contract. Contrary to the plaintiff's theory, the authorities hold that the first requisite is to ship from the port designated goods of the description given in the contract, and this requirement seems to be mandatory and not perceptive.

" 'C. I. F.;' 'C. A. F.'—The abbreviation 'c. i. f.' is sometimes used in mercantile transactions, especially in England, for costs, freight and insurance. A seller under a contract of sale containing such terms has first to ship at the port of shipment goods of the description contained in the contract; second, to procure a contract of affreightment, under which the goods will be delivered at the destination contemplated by the contract; third, to arrange for an insurance upon the terms current in the trade which will be available for the benefit of the buyer; fourth, to make out an invoice; and finally to tender these documents to the buyer so that he may know what freight he has to pay and obtain delivery of the goods, if they arrive, or recover for their loss if they are lost on the voyage. Such terms constitute an agreement that the goods, provided they are in conformity with the contract, *shall be delivered on board ship at the port of shipment.*" (Italics ours).   23 R. C. L. 1335.

Apart from what we have said, in the contract of April 19, 1920, there was an express stipulation as to the time when the merchandise should be shipped, and in accordance

with the interpretation that we have given to the word "embark" the requirement of putting on board the ship the goods described in the contract within the time agreed upon was not performed by the plaintiff; therefore, the trial court did not err in holding that the plaintiff violated the contract.

"In a mercantile contract, a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or non-performance of which the party aggrieved may repudiate the whole contract." *Norrington* v. *Wright*, 29 L. ed. 365; 115 U. S. 188, and cases cited.

In the light of that case the interpretation which we have placed upon the contract becomes clear and, therefore, for the reasons stated the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.